Ruby SNYDER, Plaintiff-Respondent,

v.

Walter HEDGES, Defendant-Appellant,

and

Kenneth Evans Light, Jr., Defendant.

No. 8260.

Springfield Court of Appeals.

Missouri.

July 31, 1964.

Tweedie Fisher, Jefferson City, for defendant-appellant, Walter Hedges.

Donnelly & Donnelly, Lebanon, Hugh Phillips, Camdenton, for defendant, Kenneth Evans Light, Jr.

J. W. Grossenheider, Lebanon, Fred Foster, Jr., Camdenton, for plaintiff-respondent.

STONE, Judge.

This is an action for damages on account of personal injuries alleged to have been sustained by plaintiff Ruby Snyder, while riding as a passenger in the front seat of a 1962 Chevrolet ambulance driven by defendant Walter Hedges, when the Hedges ambulance collided with a 1951 Chevrolet coach driven by defendant Kenneth Evans Light, Jr., on U. S. Highway 54 in the resort community known as Lake Ozark, Miller County, Missouri, about 9:10 P. M. on Tuesday, March 27, 1962. The jury returned a verdict for $4,500 against both defendants. From the judgment entered thereon, only defendant Hedges appeals.

At and near the point of accident, Highway 54 has a two-lane concrete roadway, 21 feet in width, and is treated as running east and west. Numerous establishments, catering primarily to the tourist trade, are located on each side of Highway 54 as it passes through Lake Ozark; and, on each side of the highway, there is an area, wholly paved with blacktop, between the two-lane concrete roadway and the east-and-west sidewalk in front of the business buildings. At the point of accident, the blacktop area on the north side of Highway 54 extends approximately 28′9″ from the

north edge of the two-lane concrete roadway to the curb in front of the Casablanca Club, and the blacktop area on the south side of the highway extends approximately 50' 7" from the south edge of the concrete roadway to the curb in front of the Dam Club and Adams Market.

At the time of accident, defendant Hedges was eastbound on Highway 54, en route from the home of Mrs. Lillie Hart west of Macks Creek, Camden County, Missouri, to the Still Osteopathic Hospital in Jefferson City, Missouri. Mrs. Hart, then "seriously ill" although not "an emergency case," was being transported to the hospital by direction of Kenneth Ridgeway, D. O., her attending physician. The patient, Mrs. Hart, was lying on a cot in the rear of the ambulance, a daughter was seated beside the cot, and plaintiff, a stepdaughter, was riding on the right side of the front seat. As the ambulance proceeded on its mission, a revolving and blinking dome light flashed a red beam from the top of the vehicle and two red lights on the front of the vehicle blinked alternately. The weather was clear and the pavement was dry.

Defendant Light had parked his Chevrolet automobile on the north side of Highway 54 in front of the Casablanca Club, headed north and thus at right angles to the highway. Accompanied by a female companion, Light entered his Chevrolet with the intention of backing from his parking place and then proceeding toward the *west* on Highway 54. Regardless of whether or not his view to the west (the direction from which the Hedges ambulance was approaching) was obstructed or limited by another parked automobile (as to which different inferences might be drawn from his pretrial deposition and from his testimony upon trial), Light readily admitted that he did not look to his left or to the west after he "commenced to move" his automobile backward, that his attention then was directed to a "buddy" in front of the Casablanca Club, and that he never saw the eastbound ambulance prior to the collision. He described his backing, preparatory to traveling *west* on the highway, in this language: "*I backed out into the highway with my back end going east. I was backing from north to east, this way.*" (All emphasis herein is ours.) In his trial testimony, Light thought that, at the time of collision, the left rear portion of his automobile was six to eight inches across the center line of the concrete roadway of Highway 54, i.e., on the south side thereof. In reporting to Sergeant Seeley, the investigating officer, shortly after the accident, Light had said "that I backed out in front of the ambulance." Without undertaking to fix the point of impact more precisely, the clear import of the testimony as a whole is that the collision occurred on the south side of the center line of the highway and that, at the time of accident, the eastbound Hedges ambulance was wholly in its right-hand (the south) lane of the two-lane concrete roadway.

Plaintiff's witness Sandfort, a "good friend" of defendant Light, testified that in his 1961 Chevrolet pickup he had followed the eastbound Hedges ambulance for some three miles before it reached Lake Ozark, with Sandfort maintaining a distance of "about four car lengths" or "70 feet" between the two vehicles; that the ambulance traveled at a speed of "59 to 61 miles an hour * * * on the average 60 miles an hour"; and that, prior to the accident, the stop lights on the ambulance did not come on and the ambulance did not slacken speed or swerve. Sandfort said that, as for himself, "I slowed down when I seen [sic] Mr. Light go out in the middle of the road and the ambulance not slowing down," and that the ambulance then "was about one-half of one-tenth of a mile" from the Light automobile. When asked by Light's counsel whether that distance would have been "about 260 feet," Sandfort grunted an "uh huh." Sergeant Seeley, also called as a witness for plaintiff, found skidmarks, 60 feet in length, made by the ambulance in the eastbound (south) traffic lane. These marks "angled toward the south edge of the

[concrete] pavement" and terminated in "the area of the debris."

The initial vehicular contact was between the left front corner of the eastbound ambulance and the rear 18 inches of the left rear fender of the Light automobile, the front end of which must have been pointed in a northwesterly direction with the rear end toward the southeast. The entire left side of the eastbound ambulance was damaged as it sideswiped the left rear corner of the Light automobile and came to a stop on the concrete roadway about "one car length" (so Light said) east of the point of collision. Neither Hedges nor Light was asked specifically, and it is not clear from the record (or of importance here), whether, at the moment of impact, Light had brought his backing automobile to a complete stop. Prior to the collision, Hedges did not sound either the horn or the siren on the ambulance.

Defendant Hedges' description of the accident was: "It [the Light automobile] zoomed out of the parking area there where it was parked into my pathway and it was just a split-second timing—I mean the boy was there and I was there, and I put my brakes on just immediately and we were together. There just wasn't any time element to it. * * * There wasn't time to do anything. I mean he just came out there and I applied the brakes, turned my car off of the right-hand side as much as I could, and that was about all the time there was." When asked to estimate his speed "within the last 150 or 200 feet before the collision," Hedges answered "between 35 and 40 miles an hour." After agreeing that she had not complained at any time concerning speed, plaintiff estimated the speed of the ambulance at "possibly 40 miles an hour" as it drove through Lake Ozark. Her counsel offered in evidence four kodak pictures (of the admission of which defendant Hedges then and now complains) showing "School Crossing," "Speed Zone—30 Miles" and "Congested District Ahead" signs on the south shoulder of the highway which east-

bound vehicles pass near the west edge of Lake Ozark. Sergeant Seeley, the only witness who testified on this subject, stated that "there wasn't any [traffic] congestion in the area" on the evening of the accident under consideration.

Defendant Hedges' primary complaint on this appeal is that the trial court erred in giving plaintiff's verdict-directing instruction 1 by which the case was submitted as to Hedges (so he insists) upon *general* negligence, whereas plaintiff's petition charged him with *specific* negligence. The petition contained four assignments of alleged negligence on the part of defendant Hedges, each of which was stated in a separate subparagraph. Three of these assignments were conventional charges of specific negligence, namely, (1) operation of the ambulance at a high, dangerous and excessive rate of speed, (2) failure to keep a proper lookout, and (3) failure to slacken speed, stop or swerve. The fourth assignment (hereinafter referred to as the quoted assignment) was that Hedges negligently "caused or permitted his ambulance to drive into the rear of the automobile driven by defendant Kenneth Evans Light, Jr., when by the exercise of the highest degree of care he could have avoided said collision." Instruction 1 hypothesized certain undisputed facts, i.e., (a) that plaintiff was a passenger in the Hedges ambulance eastbound on Highway 54 in Lake Ozark, (b) that Hedges was in exclusive control of the ambulance, and (c) that the Light automobile "had been parked east of the Chevrolet ambulance and was backing in a southerly direction from the north shoulder of said highway onto said highway and into the eastbound lane of traffic," and then directed a verdict for plaintiff upon the findings "that defendant Walter Hedges failed to exercise the highest degree of care in the operation of his Chevrolet ambulance and negligently and carelessly caused, allowed and permitted his Chevrolet ambulance to collide with the *rear* of the automobile driven by defendant Kenneth Evans Light, Jr." and that plaintiff was injured as

a direct and proximate result thereof. Obviously, the submission as to defendant Hedges was on the quoted assignment in the petition.

■ It undoubtedly is true that where, as here, the petition includes assignments of *specific* negligence, the case may not be submitted on *general* negligence. Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, 62(1), 63(3); State ex rel. Spears v. McCullen, 357 Mo. 686, 691, 210 S.W.2d 68, 70(1); Roscoe v. Metropolitan St. R. Co., 202 Mo. 576, 588, 101 S.W. 32, 34. So recognizing, counsel for plaintiff assert that the giving of instruction 1 did not transgress against the stated principle because (in their words) "this instruction constituted a submission of *specific* negligence under the facts and the pleadings."

■ The language of the quoted assignment of negligence in plaintiff's petition and of the hereinbefore-quoted finding required by instruction 1 strongly suggests reliance upon the so-called rear-end collision doctrine, and two of the four cases cited by plaintiff's counsel in justification of the instant submission [Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W. 2d 914; Coit v. Bentz, Mo., 348 S.W.2d 941] discussed and dealt with that doctrine. A case properly submissible and submitted under the rear-end collision doctrine is regarded as a submission on *specific* negligence [State ex rel. Spears, supra, 357 Mo. loc. cit. 691, 210 S.W.2d loc. cit. 70(2); Gooch v. Lake, Mo., 327 S.W.2d 132, 134 (3); Witherspoon v. Guttierez, Mo., 327 S.W.2d 874, 880(5)], the rear-end doctrine being defined as the "rule" recognizing that *"if one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is proceeding, and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead,* the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the overtaking vehicle." Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360, 362(3); Branch v. Gordon's Transports, Inc., Mo.App., 375 S.W.2d 418, 421(1); Glowczwski v. Foster, Mo.App., 359 S.W.2d 406, 408–409(1); Doggendorf v. St. Louis Public Service Co., Mo.App., 333 S.W.2d 302, 305(1).

■ The very language of the quoted definition indicates that this doctrine originally contemplated that both vehicles would be in motion at the time of collision. Doggendorf, supra, 333 S.W.2d loc. cit. 305. In later cases, the doctrine has been extended to factual situations where the front vehicle is at rest and there is no issue as to a sudden or improper stop thereof. E. g., McVey v. St. Louis Public Service Co., Mo., 336 S.W.2d 524, 527; Doggendorf, supra. But, in any application of the doctrine, it remains essential to plaintiff's recovery for the evidence to show, and for plaintiff's verdict-directing instruction to hypothesize and require the finding of a state of facts demonstrating, that the front vehicle was in a place where it then had the right to be. McVey, supra, 336 S.W.2d loc. cit. 527; Coit, supra, 348 S.W.2d loc. cit. 944; Doggendorf, supra, 333 S.W.2d loc. cit. 305.

■ In the instant case, plaintiff charged, and the jury found under plaintiff's verdict-directing instruction 2, that *defendant Light* "failed to exercise the highest degree of care in the operation of his motor vehicle in that he so backed his automobile into the eastbound [south] lane of traffic and into the ambulance * * * when he saw or should have seen said ambulance approaching from the west, at a time and place when he knew or should have known * * that a collision would likely occur between the two vehicles * * * and that this was negligence on the part of * * * Light which directly and proximately caused the collision." In backing onto the traveled two-lane concrete roadway of Highway 54, certainly the exercise of the highest degree

of care demanded that Light keep a look-out both before he began to back and while he was in the act of backing. McCloud v. Saling, Mo.App., 259 S.W.2d 699, 701(3, 4); Hicks v. De Luxe Cab Co., Mo.App., 189 S.W.2d 152, 154(2, 3); Shamp v. Lambert, 142 Mo.App. 567, 571–572, 121 S.W. 770, 772(1). Under the testimony, the jury's finding of negligence on the part of defendant Light was clearly permissible and fully justified. McCloud, Hicks and Shamp, supra. See also Vincent v. Raffety, Mo.App., 344 S.W.2d 293, 296(5); Barnes v. Vandergrift, 364 Mo. 829, 833–834, 269 S.W.2d 13, 16; Brumback v. Simpson, Mo., 247 S.W.2d 635; Wheeler v. Breeding, Mo.App., 109 S.W.2d 1237, 1242(2, 4–6); Nance v. Lansdell, Mo.App., 73 S.W.2d 346, 348(1); 60 C.J.S. Motor Vehicles § 302, p. 712.

■ So, this was not a rear-end collision in which there was a following and overtaking vehicle traveling behind and in the same direction as a lead or front vehicle, but rather the *eastbound* ambulance ran into the *left side* of the Light automobile near its rear end as Light was preparing to travel in a *westerly* direction. Aside from this, the evidence did not show, and the jury did not find, that the Light automobile was, at the time of collision, in a place where it then had the right to be and that it then was being operated properly as required in the exercise of the highest degree of care; but plaintiff charged, the evidence showed, and the jury found, to the contrary. Clearly, this case was not submissible under the rear-end collision doctrine.

However, plaintiff's brief carefully avoids any definite statement that she relies on that doctrine, and the other two cases cited in justification of the instant submission [Chiodini v. Terminal R. Ass'n. of St. Louis, Mo.App., 287 S.W.2d 357; Eoff v. Senter, Mo.App., 317 S.W.2d 666] were *vehicle-pedestrian* cases not involving that doctrine. In Chiodini, supra, it was held that "a prima facie case of specific negligence was made by showing that the operator of a large and heavy tractor-truck train [defendant's employee] simply drove it with force and violence into a human being [plaintiff, a Pullman conductor] who, *for half a minute, had been standing stationary and motionless on a station platform where he had a right to be, in plain view of the driver.*" 287 S.W.2d loc. cit. 362(3). In Eoff, supra, defendant either "negligent in the extreme, or worse, * * * guilty of wantonness or recklessness" [317 S.W.2d loc. cit. 670] caused his standing automobile to " 'lunge forward' " without warning into plaintiff, a parking lot guard, "[f]our or five seconds" after plaintiff had walked around in front of the automobile and had signaled a right turn. 317 S.W.2d loc. cit. 668. Plaintiff's instructions in Chiodini and Eoff, supra, were held to have been submissions of specific negligence under the broad general principle that "[i]n simple fact situations a recovery on the theory of specific negligence will be permitted to stand where plaintiff specifically charges, proves and submits the negligent commission of 'a common law wrong by a specified person, under specified circumstances, at a specified place, in the doing of a specified thing, in a specified manner, the whole of which the law denominates as negligence.' " Chiodini, supra, 287 S.W.2d loc. cit. 361(2). Even as in cases submitted under the so-called rear-end collision doctrine, the hypothesized facts (simple and elemental in nature) required to be found by the instructions under consideration in Chiodini and Eoff, supra, were such as to demonstrate negligence on the part of those against whom verdicts were authorized.

■ The hypothesization in instant plaintiff's instruction 1 with respect to the movement of the vehicles and the conduct of their drivers was that the Hedges ambulance was eastbound on Highway 54 in Lake Ozark, that the Light automobile "had been parked east of the Chevrolet ambulance and was backing in a southerly direction from the north shoulder of said highway onto said highway and into the eastbound lane of traffic," and "that defendant Walter

Hedges failed to exercise the highest degree of care in the operation of his Chevrolet ambulance and negligently and carelessly caused, allowed and permitted his Chevrolet ambulance to collide with the *rear* of the [Light] automobile." Again, we note parenthetically that the ambulance actually collided with the *left side* of the Light automobile near its rear end. But, passing that, the mere occurrence of the collision did not establish negligence on the part of defendant Hedges [Herr v. Ruprecht, Mo., 331 S.W.2d 642, 647(3); Anthony v. Jennings, Mo.App., 368 S.W.2d 533, 537(4); Miller v. Wilson, Mo.App., 288 S.W. 997, 999(4)], and the *facts* hypothesized in instruction 1 were not such as to demonstrate or justify an inference that Hedges had been negligent. Contrast Chiodini and Eoff, supra.

■ "In fact situations in which the doctrine of res ipsa loquitur is inapplicable and a case of specific negligence is sought to be stated the extent to which plaintiff must particularize depends upon the circumstances." Chiodini, supra, 287 S.W.2d loc. cit. 361(1); Beard v. Railway Express Agency, Inc., 323 S.W.2d 732, 740. See Phillips v. Stockman, Mo.App., 351 S.W.2d 464, 476(15). We are of the opinion that, in the circumstances of the instant case, plaintiff's instruction 1 did *not* constitute a submission on *specific* negligence but rather submitted *general* negligence and accorded to the jury a roving commission to find against defendant Hedges. Plaintiff having pleaded (and undertaken to prove) *specific* negligence, the giving of instruction 1 submitting the case on *general* negligence constituted reversible error. Girratono, supra, 363 loc. cit. 364, 251 S.W.2d loc. cit. 62(1), 63(3).

■ The other point pressed by defendant Hedges on this appeal predicates error on the admission in evidence of four kodak pictures showing "School Crossing," "Speed Zone—30 Miles" and "Congested District Ahead" highway signs which the ambulance passed near the west edge of Lake Ozark. The ambulance was an "emergency vehicle" within the statutory definition [V.A.M.S. § 304.022, subsec. 3(1)], but defendant Hedges' right to the exemptions granted to the driver of an "emergency vehicle" was neither pleaded nor proved. V.A.M.S. § 304.022. In this state of the record, we could not say that the admission of these kodak pictures constituted reversible error "materially affecting the merits of the action." V.A.M.R. Rule 83.13(b); V.A.M.S. § 512.160(2).

■ Although defendant Light has not appealed, it necessarily follows from our disposition of the case as to defendant Hedges that the issue of damages must be retried as to defendant Light, inasmuch as the final judgment, if plaintiff should prevail against Hedges as well as Light, must be in the same amount against all defendants held liable. Gardner v. Simmons, Mo., 370 S.W.2d 359, 366(10); Cox v. Wrinkle, Mo., 267 S.W.2d 648, 653(8); Bauman v. Conrad, Mo.App., 342 S.W.2d 284, 290(11); Davison v. Farr, Mo.App., 273 S.W.2d 500, 505(12); Polkowski v. St. Louis Public Service Co., 229 Mo.App. 24, 33, 68 S.W.2d 884, 889(8, 9). See also Yarrington v. Lininger, Mo., 327 S.W.2d 104, 111(17); Rosenkoetter v. Fleer, Mo., 155 S.W.2d 157, 160(8).

Accordingly, the judgment in favor of plaintiff is reversed and the cause is remanded (a) for retrial on all issues as to defendant Hedges and (b) for retrial on the issue of damages only as to defendant Light, with the verdict against Light on the issue of liability to be held in abeyance pending entry of judgment following such retrial.

RUARK, P. J., and HOGAN, J., concur.