Priscilla TODD, Appellant,

v.

Leo PRESLEY, Respondent.

No. 52231.

Supreme Court of Missouri, Division No. 2.

April 10, 1967.

Frieze & Crandall, Carthage, for appellant.

Edward G. Farmer, Jr., James E. Brown, Joplin, for respondent.

STOCKARD, Commissioner.

In this personal injury action for damages in the amount of $20,278.25, the jury verdict was for defendant and plaintiff has appealed.

Plaintiff was a front seat passenger in an automobile operated by Mr. Ernest Evans, her brother-in-law. Mr. Evans traveled eastward on what was referred to as the Stockyard Road to its intersection with Range Line Road, a north-south four-lane through highway. He stopped his automobile at the intersection and waited for a southbound automobile to pass. He then entered the intersection and proceeded northeastward and turned left onto the outer or east lane of the two northbound traffic lanes, although at the time the inner or west lane was open. After the automobile had traveled northward 75 to 100 feet on Range Line Road, according to plaintiff's evidence, it was struck in the rear by defendant's truck which was and had been for some distance traveling northward in the east traffic lane. Plaintiff's only evidence as to the speed of defendant's truck was that it was going fast. The truck driver testified that his speed was 45 miles an hour.

■ Plaintiff first contends that the trial court erred in refusing to give her requested instruction submitting what is called the rear-end collision doctrine. This is the rule of law which recognizes that "if one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is proceeding, and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the overtaking vehicle." Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360, 362; Witherspoon v. Guttierez, Mo., 327 S.W.2d 874; Withers v. McCluey & Pettit, Mo., 337 S.W.2d 66; Doggendorf v. St. Louis Public Service Company, Mo.App., 333 S.W.2d 302; Snyder v. Hedges, Mo.App., 381 S.W.2d 376.

In order for plaintiff to have been entitled to an instruction submitting the rear-end collision doctrine as a basis for recovery, it was necessary that the evidence establish that the front vehicle was "in a portion of the highway where [the operator] should have it or [was] entitled to have it in view of the course in which he [was] proceeding," Hughes v. St. Louis Public Service Co., supra, and that the defendant's vehicle, which was traveling behind plaintiff's vehicle and in the same direction, overtook and ran into the rear of the one ahead. See Witherspoon v. Guttierez, supra, and Rosenfeld v. Peters, Mo., 327 S.W.2d 264. Section 300.215, RSMo. Cum. Supp. 1965, regulating the manner of turning left into a four-lane highway, was not in effect at the time of the collision in this case, but Section 304.021 RSMo 1959, V.A.M.S., required Mr. Evans to yield to a vehicle on the through highway which was approaching so closely to constitute an immediate hazard. The evidence clearly established that Mr. Evans drove the automobile in which plaintiff was riding eastwardly and directly into the path

of the northbound truck in violation of Section 304.021 because the truck was on a through highway and was so close and was proceeding at such a speed that a collision was inevitable. This is the precise situation referred to in Witherspoon v. Guttierez, supra, which discussed in detail the specific problem we have here concerning the application of the rear-end collision doctrine. In the Witherspoon case the front vehicle in which the plaintiff was riding did not turn onto the highway in front of defendant's vehicle, but in discussing the factual situations to which the doctrine was applicable, this court said: "Now if the Nash [front vehicle] * * * had been traveling eastwardly on Blue River Road and had turned left abruptly from the side road onto No. 71 and into defendant's northerly path immediately before the collision (circumstances wholly unlike the typical 'clear and simple situation of one vehicle being operated for a considerable distance behind another and overtaking it') a rear-end collision instruction would have been inappropriate." While this statement is dicta to the result reached in that case, we are in complete agreement with it. The facts of this case do not present the "clear and simple situation of one vehicle being operated for a considerable distance behind another and overtaking it," Rosenfeld v. Peters, supra, but presents the situation of an intersectional collision. The collision did not occur because the following vehicle overtook the vehicle ahead, but it occurred because the Evans vehicle was driven eastwardly directly into the path of the northbound truck when it was so close that it constituted an immediate hazard, and if defendant's driver was negligent it was not negligence based on the rear-end collision doctrine. This rule of law was never intended to apply to a situation which is in fact an intersectional collision, but by reason of last second evasive maneuvering of one or the other of the vehicles one is struck in the rear by the other. This case was not submissible under the rear-end collision doctrine. For a related discussion, see Snyder v. Hedges, Mo.App., 381 S.W.2d 376.

Plaintiff next contends that the trial court erred in refusing her requested instruction submitting humanitarian negligence in failing to slacken speed or swerve or sound a warning. Certain additional facts are necessary.

When Mr. Evans "started to move his car" onto Range Line Road after waiting for the southbound car to pass, plaintiff saw defendant's truck "just over the tracks" to the south. The exact distance is not shown, but Mrs. Evans who was plaintiff's sister and also a front seat passenger, said the truck was then about "three blocks" away. After the Evans automobile had moved eastward onto the highway and about the time that Mr. Evans started to turn to the left, defendant's truck was "a block or a little more" away, and Mrs. Evans estimated a block to be 300 feet in length. At that time the truck "had got so close" that Mrs. Evans said, "Oh, Ernest, hurry, that truck is coming so fast." The only evidence of plaintiff as to the speed of the Evans automobile as it entered the northbound lane was the testimony of Mrs. Evans that it was proceeding at "just ordinary speed that you would put out to cross," which she estimated to be twenty or twenty-five miles an hour, or "something like that." Defendant's driver testified that it was proceeding at five to ten miles an hour, and he testified that he was operating his trailer-truck north on Range Line Road in the outer or east lane at 45 miles an hour. He further testified that he saw the Evans automobile while it was stopped at the intersection, and when his truck was about 200 to 250 feet from the Evans car it started to move from the stop sign and then proceeded northeastward at an angle. When his truck was about 20 to 30 feet from the Evans automobile he saw that it "was coming into [his] lane," and he then applied his brakes but struck the right rear of the automobile while it was still going northeast and before it was completely in the east lane. The left front of the truck and the right rear of the Evans automobile were damaged. The driver testified that he could pull out to pass a car ahead of him when he was ten feet behind it if "it had been in one lane all the time," but that he could not have pulled out to pass in this case.

The first and basic requirement of liability under the humanitarian rule is what previously has been denominated a position of imminent peril, but which is now referred to in the new jury instructions as a position of immediate danger of being injured. The change in terminology has not changed the substance of this requirement. It is only when this position arises or exists that the humanitarian rule seizes upon the then existing situation, in effect *"blotting out primary or antecedent negligence,"* Downing v. Dixon, Mo.App., 314 S.W.2d 927, 930, and imposes a duty *thereafter* to exercise the required degree of care to avoid the threatened injury. Davis v. Quality Oil Company, Mo., 353 S.W.2d 670, 673. "The imminent peril [now immediate danger of being injured] referred to in the humanitarian rule is that position of danger to the plaintiff, whether or not plaintiff was negligent in getting there, in which by reason of the then existing circumstances, if unchanged, injury to him is reasonably certain and not a mere possibility contingent on some other occurrence. The courts have said that 'The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril.'" Yarrington v. Lininger, Mo., 327 S.W.2d 104, 109. What constitutes a position of immediate danger of being injured varies according to the circumstances. "In the absence of obliviousness, the position or danger zone of [immediate danger of being injured] of a person approaching the path of a moving vehicle reaches no farther beyond the direct path of such moving vehicle than the distance within which such approaching person is unable by his own efforts to stop [or, in this case, turn] short of it." Lotta v.

Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296, 300. But, when the plaintiff is oblivious, it has been said that the zone of immediate danger of being injured is widened to that point where it was or should have been reasonably apparent to the defendant in the exercise of the required degree of care that the plaintiff was oblivious of the approach of defendant's moving vehicle and was intent on continuing across its path. Wabash Railroad Company v. Dannen Mills, Inc., 365 Mo. 827, 288 S.W.2d 926, 929. See also Schmittzehe v. City of Cape Girardeau, Mo., 327 S.W.2d 918, 924, and the cases there cited. In her brief plaintiff makes no contention that either she or Mr. Evans was oblivious, and such contention would be without merit. Plaintiff's evidence establishes, without contradiction, that when defendant's truck was "a block or a little more away" and when Mr. Evans "started to turn to the left" his wife warned him of the presence of the truck and that it was "coming so fast," and that plaintiff heard that warning. However, whether or not Mr. Evans or plaintiff was oblivious, plaintiff did not enter into a position of immediate danger of being injured until it was or should have been reasonably apparent to defendant's driver in the exercise of the highest degree of care that Mr. Evans was intent on crossing the inner or westerly northbound lane, which was free of traffic, and was intent upon entering the easterly or outer lane and into the truck's path. This did not occur under the evidence in this case until the truck, traveling 45 miles an hour or approximately 66 feet per second, was 20 to 30 feet from the Evans automobile. There is no evidence from which it could be found that thereafter any action could have been taken by defendant's driver with safety to himself in attempting to slacken speed, swerve or sound a warning which could have prevented the collision.

Plaintiff's only argument in her brief in support of her contention that the evidence authorized a humanitarian submission is that defendant's driver "saw the automobile in which plaintiff was riding for a distance of well over one-quarter of mile," and he "saw the car as it was stopped just west of Range Line Road and that he saw it come onto the highway thereafter," and although the road had two northbound traffic lanes and he was in the outside lane "he did nothing in the way of taking evasive action until the front of his truck was something like 20 to 30 feet from the automobile in which plaintiff was riding." This may demonstrate primary negligence on the part of defendant's driver, which was submitted to the jury and by it resolved against plaintiff, but it does not, under the facts of this case demonstrate humanitarian negligence. It is extremely important to recognize and keep in mind the basic difference between primary negligence and humanitarian negligence, and that "not every state of facts resulting in injuries from moving objects gives rise to \* \* \* a cause of action" under the humanitarian rule. Smith v. Siedhoff, Mo., 209 S.W.2d 233, 236.

■ Plaintiff next asserts error resulted in the trial court giving at defendant's request an instruction on right of way which followed MAI No. 14.05, because, as stated in her motion for new trial, (1) it "was not authorized under the evidence of this case;" (2) it "improperly limited and restricted the plaintiff's right of recovery against the defendant under the circumstances and evidence surrounding the injuries received by plaintiff;" and (3) it "constituted an abstract and unauthorized declaration of the law, it was not justified under the testimony in this case, and was prejudicial and harmful to the rights of the plaintiff." In her brief she also asserts that this instruction was erroneous because she was "entitled to submit her claim \* \* \* under the humanitarian doctrine."

Almost all of the argument in plaintiff's brief under this point is directed to the contention that an instruction on right of

way is not proper in a case submitted under the humanitarian doctrine, an issue we shall not discuss because we have determined that the evidence did not authorize a humanitarian submission. Other than on the basis that she claims to have had a humanitarian submission, she makes no effort either in the motion for new trial or in her brief (point or argument), to demonstrate how or in what manner the instruction "limited and restricted" her right of recovery, was "prejudicial and harmful" to her rights, or constituted an "unauthorized declaration of the law." We need not consider further these abstract assertions. She does argue that the instruction was not authorized under the evidence, but the argument presented is that "Under plaintiff's testimony, in the present proceeding, the testimony of both plaintiff and her sister, Mrs. Ardene Evans, was that defendant's truck was south of the railroad crossing on Range Line Road, well over 1,000 feet away from the automobile in which plaintiff was riding, when the automobile in which plaintiff was riding moved from a stopped position onto Range Line, turned north, and was thereafter struck from the rear by defendant's truck." We do not agree entirely with this statement of plaintiff's evidence, but accepting it for the purposes of this discussion, it ignores entirely the previously mentioned evidence offered by defendant which clearly authorized the instruction. The court did not err in giving MAI No. 14.05 on right of way.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

EAGER, P. J., FINCH and DONNELLY, JJ., and STUBBS, Special Judge, concur.