Leona Fern CLEVENGER, Appellant,

v.

Clarence WALTERS, Jr., Respondent.

No. 51908.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1967.

Rehearing Denied Oct. 9, 1967.

Robert L. Shirkey, Kansas City, for appellant.

Somerville & Cleaveland, Ronald L. Somerville, Lloyd A. Cleaveland, David P. Macoubrie, Chillicothe, for respondent.

FINCH, Judge.

Plaintiff sued for $25,000 damages on account of personal injuries alleged to have been sustained as a result of an automobile collision. The jury returned a verdict for $15,000, but the trial court sustained defendant's motion for a new trial on the ground that plaintiff's verdict-directing Instruction No. 3 was erroneous. On appeal, the Kansas City Court of Appeals reversed and remanded with directions to reinstate the judgment for plaintiff in accordance with the jury verdict. On application of defendant Walters, this court ordered the appeal transferred. An opinion was written herein but the court granted a rehearing and this opinion is written following argument on the rehearing.

The case was submitted to the jury on the so-called rear-end collision doctrine. All evidence on the issue of liability was adduced by the plaintiff. Except for a medical witness, defendant stood on his motion for a directed verdict.

The accident occurred on May 25, 1962, between 4:30 and 5:00 p. m., on U.S. Highway 36 at a point 1.7 miles west of its junction with Missouri State Highway 139. The pavement was 20 feet wide with a bituminous surface. The day was bright and clear and the pavement dry. At the place where the accident occurred, a "country road" forms a T with U.S. 36 and extends north a sufficient distance to provide access to farmland in that area. The plaintiff and her husband operated a service station and cafe on the north side of U.S. 36 a little less than a half mile west of this side road. Eastward from their place of business, U.S. 36 is straight and downgrade for about a half mile and beyond that it is level for another half mile. The plaintiff's husband cultivated some farmland located on the country road north of U.S. 36.

The plaintiff, her husband, and a highway patrolman were the witnesses on the issue of liability. The evidence tended to establish that the plaintiff, driving a 1954 Ford Ranch Wagon, left the place of business to drive her husband to the field where he was conducting his farming opera-

tion. Plaintiff drove in the eastbound lane (the south half of U.S. 36) at a speed of 35 to 40 miles per hour. When she was about halfway between the filling station and the entrance to the country road, she looked into her rear-view mirror for the first time and saw defendant's automobile following some distance behind in the eastbound lane. When she was between 400 and 500 feet west of the country road, she put on her left blinker light to signal the left turn she intended to make and started to slow down. Another automobile was approaching from the east and the plaintiff slowed further to permit this car to pass before she made the left turn. Sometime before reaching the country road (she was unable to fix the distance) she again looked into the rear-vision mirror and saw the defendant's car behind her, although closer. The defendant was still in the eastbound lane and there was no indication that he intended to pass the Clevenger automobile.

After the westbound automobile passed, plaintiff, then going 5 to 10 miles per hour, started to turn left (north) onto the country road. At that time she was approximately even with the west edge of the country road onto which she was going to turn. When plaintiff's automobile, headed in a somewhat northeasterly direction, had reached a position with at least a portion of its rear end still a foot or two south of the center line of U.S. 36 and the front end extending a little over the north edge of the pavement and onto the gravel of the country road, it was struck by defendant's approaching car. No horn was heard by plaintiff or her husband, but they did hear the screech of brakes before the collision.

Debris consisting of dirt, glass and metal was found to the north of the center line of U.S. 36 and just to the west of the T intersection with the country road onto which plaintiff was turning. Skid marks, 174 feet in length, started at a point in the east lane of traffic (south half of Highway 36) and led to defendant's car. Both skid marks crossed the center line and went over into the north half of the pavement. A little more than half of the skid marks were on the south side of the center line before they crossed into the westbound lane of traffic. Defendant's automobile came to rest headed southeast in the north half of U.S. 36 at its intersection with the country road. Plaintiff's car, after the accident, was on the north shoulder of U.S. 36 and about 50 feet east of the country road. It was knocked east by the impact and started down the embankment toward a utility pole, but plaintiff's husband grabbed the wheel, pulled the car back on the shoulder, got his foot on the brake and brought the car to a stop.

Plaintiff testified that defendant's "right front end hit our left rear driver's side and knocked a hole in the middle of the car and the bumper was bowed up, and it knocked the big taillight, broke that red light out, and the fender was bent into the tire." Trooper Conyers, who was called to the scene after the accident, described the damage to plaintiff's car as consisting of "the left rear fender, the taillight, bumper and rear door bashed in." He said the defendant's automobile had "the right front end, the grille and the radiator bashed in." Plaintiff's husband testified as to the damage to both vehicles. He stated that the front end of defendant's car collided with the rear end of plaintiff's station wagon, although he did not actually see defendant's automobile until after the collision. Defendant did not testify, but Patrolman Conyers, in testifying for plaintiff, stated that defendant told him, "I was going east and started to pass this car and she turned left and I couldn't stop."

■ The trial court, in granting the defendant a new trial, stated that "it was error to give Instruction No. 3." In reviewing this question, it should be kept in mind that when a motion for new trial is sustained, an appellate court is more liberal in upholding the action of the trial court in granting a new trial than when the motion

is denied. Tate v. Giunta, Mo., 413 S.W.2d 200 [4]. "This rule of liberality applies even when a new trial is granted for error in an instruction." Coit v. Bentz, Mo., 348 S.W.2d 941, 946.

Instruction No. 3 was as follows:

"You are instructed that under the law of Missouri it is the duty of one driving and operating a motor vehicle on the highways of this state to at all times use and exercise the highest degree of care in the driving, management and operation of the motor vehicle.

"You are further instructed that if you find and believe from the evidence on May 25, 1962 plaintiff Clevenger was proceeding in an easterly direction on Highway No. 36 at the place mentioned in the evidence and was at all times in the exercise of the highest degree of care for her own safety and that as plaintiff proceeded eastwardly and turned to her left, or north and as the defendant Walters was operating his vehicle in an eastwardly direction and to the rear of plaintiff Clevenger's automobile he negligently and carelessly allowed his automobile to run into and collide with the rear end of the automobile plaintiff Clevenger was operating, if you so find and as a direct result of such negligence, if any, on the part of Walters, the plaintiff Clevenger was injured, then in such circumstances, if you so find them, your verdict should be in favor of the plaintiff Clevenger and against the defendant Walters."

■ It is well established that one of the fundamental requirements of the rear-end collision doctrine is that plaintiff's vehicle, at the time of the collision, be in a place where he had a right to be. Judge Hyde, in Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914, 918, stated it thus: "Did defendant's driver run its truck into the rear end of plaintiff's car while plaintiff's car was being properly driven in the part of the highway where it should have been and

was entitled to be?" In that connection, the court, in discussing plaintiff's verdict-directing instruction, stated as follows, l. c. 917: "Plaintiff's instruction authorized his recovery only if the jury found that defendant was 'driving and operating' its transport truck south 'behind (plaintiff's) pickup truck,' while plaintiff was driving it south 'on the west and right hand side of the pavement' and 'west of the center line,' and that defendant 'negligently caused, allowed and permitted' its transport truck 'to run into, strike and into collision with the rear end of the pickup truck' of plaintiff 'at said time and place.'"

In the case of Rosenfeld v. Peters, Mo., 327 S.W.2d 264, l. c. 269, the court, in discussing the instructions, had this to say: "Instruction G, offered by plaintiff, referred to by plaintiff as a rear end collision instruction and claimed to be authorized by our decisions in Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68, was not a proper instruction. This instruction (leaving out the 'if you find's') submitted that 'plaintiff was a passenger in an automobile which was being driven in an easterly direction over and along Highway 40 at the place mentioned in evidence, * * * that the defendant drove his automobile in an easterly direction over and along said Highway, into the rear of the automobile with plaintiff therein, and * * * that the defendant caused, suffered and permitted the front end of his automobile to come in contact with the rear end of the automobile with plaintiff therein, and was negligent.' *The trouble with this instruction is that it did not (as the Jones case instruction did) 'require a finding of plaintiff's position in a place where he had the right to be, operating his car properly as required by the highest degree of care, together with his environment and other facts of the situation which showed he could not have been negligent,* and then required the finding of the affirmative act by the defendant of driving its truck into that part of the highway and

against the rear end of plaintiff's car.'" (Emphasis supplied.)

Again, in Snyder v. Hedges, Mo.App., 381 S.W.2d 376, 380, the court had this to say on the necessity of submitting the issue of whether plaintiff's vehicle was in a place where it had a right to be: "But, in any application of the doctrine, it remains essential to plaintiff's recovery for the evidence to show, *and for plaintiff's verdict-directing instruction to hypothesize and require the finding of a state of facts demonstrating, that the front vehicle was in a place where it then had the right to be.*" (Emphasis supplied.)

■ By way of contrast, Instruction No. 3 required no finding by the jury that the plaintiff, at the time of the collision, had her car at a place where she had a right to have it. The instruction makes reference to the fact that the plaintiff turned to her left or north but requires no finding as to where the vehicle was on the highway at the time it was hit, or even that it was on the highway, and it cannot be said that the instruction required a finding of plaintiff's position in a place where she had a right to be, and consequently the trial court was correct in granting a new trial for error in that instruction. We do not deem it necessary to discuss the matter in further detail because cases now are tried under MAI instructions. This case, however, was tried before MAI instructions were required and consequently it was necessary that the instruction meet the requirements which the cases then had made with reference to instructions in rear-end collision cases. The sufficiency of the instruction cannot be determined on the basis of the MAI instruction for rear-end collision cases.

Defendant also insists that the plaintiff did not make a submissible case under the rear-end collision doctrine. We will not attempt to rule that question since we do not know just what the evidence may disclose on retrial, but in view of the fact that the case is to be retried, we feel ob-

ligated to say that on the record presently before us there is grave doubt that a submissible case can be made under that doctrine.

■ In the first place, there is a dispute between the parties as to whether the evidence shows that defendant collided with the rear end of plaintiff's vehicle. Photographs of the plaintiff's station wagon were made but were not introduced in evidence and are not before us. We are unable to say on the record before us that defendant did collide with the rear end of plaintiff's vehicle. We observe, parenthetically, that not even all rear-end collisions fall within the doctrine. Todd v. Presley, Mo., 413 S.W.2d 173.

■ Secondly, this is not the classic case where plaintiff is proceeding directly ahead in his proper lane and defendant runs into the rear end of his vehicle. It seems quite clear from the evidence that plaintiff's station wagon had almost completely left the south half of the pavement (eastbound lane) and at the time of the impact completely occupied the width of the north half of the pavement. The impact by defendant's car occurred entirely on the north half of the pavement. This differs materially from the situation in the Jones case, which established this doctrine. In Jones, as pointed out previously, plaintiff's instruction required a finding that plaintiff was driving on the right-hand side of the pavement, and the defendant's instructions informed the jury that plaintiff could not recover if he permitted his vehicle to travel across the center line onto the left-hand side of the pavement.

In Witherspoon v. Guttierez, Mo., 327 S.W.2d 874, plaintiff was a passenger in a Nash automobile going north on U.S. Highway 71 which at that point is a divided highway with separate double lanes for northbound and southbound traffic. According to plaintiff's evidence, the Nash was in the left half of the northbound 20-foot lane and was approaching Blue

River Road intersection at 25 to 30 miles per hour. At a point 50 to 80 feet from the intersection the Nash began to slow down and angle left. When its left front wheel was a foot or so to the left of the west edge of the northbound pavement and the rear wheel two or three feet to the east of the west edge of the pavement, the driver of the Nash suddenly discovered the lights of a Chrysler coming up from behind at 40 to 45 miles per hour and trying to pass to his left. The driver of the Nash cut his wheels back right and accelerated. After it was entirely back on the northbound pavement, traveling north and parallel to U.S. 71 (its left wheels a couple of feet east of the west edge of the northbound pavement), the left rear end of the Nash was struck by the right front and right headlights of the Chrysler. Defendant's version of the occurrence was different, but the court properly considered the evidence most favorable to plaintiff in considering whether a case was made under the rear-end collision doctrine. This court held that the factual situation brought the case within that doctrine. In so holding, the court said, l. c. 878: "While this is not the typical factual situation in which the rear-end collision 'doctrine' ordinarily is invoked (because of the deviation in the course of the Nash) it is sufficiently akin to that class of cases (because the deviation was so slight) to require us to uphold a verdict based upon an instruction submitting the elements of that theory of recovery." Subsequently, on the same page, the court further states: "Nor was there any deviation from this constant situation (the faster-moving Chrysler gaining on and finally overtaking the slower-moving Nash) sufficient to take this case out of the purview of the rear-end collision cases. True enough, there was a deviation in the course of the Nash (the driver angled to the left [west] edge of the pavement, intending to turn left onto the side road and started to make the turn) but the deviation was inconsequential, trivial and not so marked as to remove the case from the 'clear and simple situation' referred to in the decisions. * * * There was no real break in the continuity of the northerly movement of the Nash on No. 71. For all practical and legal purposes the Nash remained on No. 71 at all times preceding the collision." In the same case, l. c. 879, the court said: "If plaintiff's evidence had been in accord with defendant's evidence, namely, that the Nash suddenly and without warning turned left from the right lane onto the left or west half of the pavement, in front of the oncoming Chrysler then occupying the left or west half of the northbound lane, and that the Chrysler had struck the rear of the Nash under those circumstances, the so-called rear-end collision 'doctrine' would not have been applicable."

We will not review all of the cases involving application of the rear-end collision doctrine nor undertake herein to define exactly what are the permissible outer limits of any deviation permitted from the basic premise of a following and overtaking vehicle which runs into the rear end of the lead or front vehicle which is traveling in the same direction at a place where it has a right to be. This can be determined satisfactorily only on a case by case basis, but we repeat the caveat expressed in Witherspoon v. Guttierez, supra, l. c. 878: "It is not recommended that this theory of recovery be employed except where the facts come strictly within the pattern of the typical rear-end collision situation." We emphasize that caveat.

It is unlikely that the other trial errors of which defendant complains will occur again in a new trial and hence we do not consider them herein. Defendant's brief asserts that under the evidence the plaintiff was guilty of contributory negligence as a

matter of law, but we do not so find. The judgment is affirmed.

HENLEY, EAGER and DONNELLY, JJ., concur.

STORCKMAN, J., dissents in separate dissenting opinion filed.

HOLMAN, C. J., and SEILER, J., dissent and concur in dissenting opinion of STORCKMAN, J.

## DISSENTING OPINION

STORCKMAN, Judge.

The majority opinion deals chiefly with the propriety of Instruction No. 3, plaintiff's verdict-directing instruction, and the sufficiency of the facts to make a submissible case under the rear-end collision doctrine. The defendant's attack on the sufficiency of the evidence has two principal aspects. First it is contended that defendant's motion for a directed verdict should have been sustained because the plaintiff failed to prove any negligence. Next it is asserted that defendant's motion for new trial was correctly sustained because plaintiff's verdict-directing instruction was erroneous in that the rear-end doctrine was wholly inapplicable and the instruction constituted a submisssion of "general negligence only and not specific negligence, thereby giving the jury a roving commission." We will first consider the majority opinion's treatment of the sufficiency of the evidence to support the plaintiff's verdict returned in response to the submission of liability on the theory of a rear-end collision.

In determining whether the evidence was sufficient to make a submissible case under the rear-end collision doctrine, the plaintiff is entitled to have her evidence considered in its most favorable light and is further entitled to all favorable inferences that can reasonably be drawn therefrom. This rule is so trite that it would hardly need to be stated but for the fact that the majority opinion appears to have taken the opposite view.

The plaintiff was driving a 1954 Ford Ranch Wagon, sometimes referred to as a station wagon. It is common knowledge that one of the unusual features of this type of motor vehicle is a door in the rear or back *end* that can be opened for loading and unloading cargo of various sorts. This is in addition to one or more sets of side doors. The favorable view of the evidence would be that the witnesses were talking of such a rear door in describing the point of contact. This view would also be more consistent with the physical facts such as the position of plaintiff's car when it was struck and the damage to the rear bumper, the rear fender, and the taillight. This view is also harmonious with the plaintiff's description that the car was struck on the left rear driver's side. Also when she said in this connection that a hole was knocked in the middle of the car the favorable view is that she was talking of the middle of the rear end or the back door. The same construction should be put on the testimony of her other witnesses including her son whose testimony is not referred to in the majority opinion. We must also keep in mind that the defendant offered no conflicting evidence. This dissenting opinion will undertake to view the evidence in a favorable light with as little repetition as possible.

In discussing the application of the rear-end collision doctrine, the majority opinion fails to give effect to direct and circumstantial evidence which gives further support to the factual proposition that the plaintiff's automobile was struck from the rear when the plaintiff had her vehicle in a portion of the highway where she was entitled to have it in view of the course in which she was proceeding. The evidence shows that plaintiff's car, at the time it was struck, was headed northeast in the north half of the highway with a portion of the front off the north side of

the pavement and a portion of it still a foot or two over the center line in the south half of the highway. Placing a motor vehicle, approximately 18 feet long, in such a position headed in a northeast to southwest direction on a strip of pavement ten feet wide demonstrates that the left rear portion of the vehicle would be nearer to the middle of the ten-foot strip than to the center line of the highway. At the time of the collision, the defendant's automobile was in the north ten-foot portion of the highway apparently moving straight ahead as shown by his skid marks and the shakedown. This is consistent with the evidence of physical damage to the plaintiff's car which was described as being to the back end, the rear bumper, and the left rear taillight and fender.

There is further direct evidence that the Clevenger car was struck from the rear and in the rear end, particularly on the left portion of the rear end. Lyndell Gerald Clevenger, a son of the plaintiff, was working on a tractor in a field about 300 feet directly south of the place where the collision occurred. He testified that he saw the "family car" coming down the road with "this other car coming behind it," that he "saw smoke coming from his tires" and that the other car hit the family car and pushed it down the highway. These questions were then asked and these answers given:

"Q (By Mr. Shirkey) What part of the family automobile was struck?

"A The rear end.

"Q All right, and what part of the other vehicle struck it?

"A The front end."

As to what he saw after he went over to the place of collision, plaintiff's son further testified:

"Q Can you describe the damage that you saw to his automobile?

"A Well, the hood, and headlights, and grille, and bumper was all smashed in.

"Q And what had happened to the family automobile?

"A Well, the back end was smashed in.

"Q By the back end what part do you mean by that?

"A Well, the fenders and bumper.

"Q Is this also what you call the rear end?

"A Yes."

There is undisputed evidence by the highway patrolman that the left rear bumper and taillight of the Clevenger car was "bashed in". This was corroborated by Mr. and Mrs. Clevenger. The majority opinion tends to discount as a conclusion their statements that their car was struck initially at the left rear corner on the ground that they did not actually see the contact. But sight alone is not the only reliable sense by which a person can determine where his car has been struck. The direction of the sound and the feeling of momentum resulting from the impact are quite trustworthy. If the occupant of the lead car cannot testify that his vehicle was struck from the rear, the testimony in a rear-end collision case will be severely limited which is a handicap the doctrine was intended to avoid.

The "rear-end collision doctrine" means that, if a person has his motor vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is proceeding, and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against the person in charge of the overtaking vehicle. Jones v. Austin, Mo.App., 154 S.W.2d 378, 381 [8]; Jones v. Central States Oil Co.,

350 Mo. 91, 164 S.W.2d 914, 919–920 [5]; Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360, 362 [3]; Witherspoon v. Guttierez, Mo., 327 S.W.2d 874, 880 [5]; Branch v. Gordon's Transports, Inc., Mo.App., 375 S.W.2d 418, 421 [1]; Snyder v. Hedges, Mo.App., 381 S.W.2d 376, 380 [2, 3].

If the plaintiff's evidence is true, and we must so accept it on this appeal, the plaintiff gave a proper and timely warning of her intention to turn left into the country road. At the time of the collision, her automobile was in a proper position to execute the turn which she had signaled for a distance of 400 to 500 feet west of the side road. There is direct evidence that the defendant was following in the same lane as the plaintiff which is buttressed by the fact that the defendant's skid marks began in the eastbound lane and extended a distance of 174 feet to the place where defendant's automobile came to rest headed southeast in the west lane or north half of the highway at the intersection of the country road and U. S. 36. The highway patrolman estimated that the defendant was traveling 70 miles per hour when he applied his brakes which was the legal limit at that section of the highway. Allowing for normal reaction time, the defendant's automobile traveled 77 feet in the eastbound lane after he perceived the need of slowing or stopping his car and before the skid marks began. Thus he was in the eastbound lane a distance of at least 164 feet (one-half the skid marks plus the reaction distance) while he was undertaking to slow or stop before he crossed over into the west lane or north half of the highway. This is hardly consistent with the defendant's contention that he was undertaking to pass the plaintiff when she started her left turn. In these circumstances the jury could reasonably believe that the defendant had proper warning of the left turn between 400 and 500 feet west of the country road but that he made no effort to lessen the speed of his automobile until he was about 251 feet from the

point of collision, and that he thereby negligently allowed his automobile to collide with the Clevenger car.

The evidence tends to show that the Clevenger car was propelled about 100 feet east of the side road and came to rest on the pavement and that Mr. Clevenger backed it onto the north shoulder to a point 40 to 50 feet east of the side road. The direction and distance of the propulsion is hardly consistent with the view that the Clevenger automobile was struck initially and primarily on its left side. The inference that the plaintiff was struck from the rear is the only logical one in the circumstances shown by the evidence.

The "rear-end collision doctrine" is designed to cover situations where the driver or occupant of the car struck cannot be expected to know precisely the neglect or failure of the driver of the following car. If the doctrine, which is somewhat indigenous to Missouri, has any value, it serves that purpose and relieves the plaintiff from resorting to speculation in selecting the submissible ground of negligence. The driver of the following car, however, does have a view of what is ahead of him and can better explain why he allowed or permitted some portion of his car to strike the rear of the car ahead which is in a portion of the highway where it is entitled to be in view of the course in which it is proceeding. It is doubtful if the rear-end collision doctrine presents any stricter rule of liability than the several other grounds of primary negligence and also the humanitarian rule.

Moreover, it is apparent from the reported decisions that the rear-end collision doctrine is not limited to situations where the evidence clearly establishes that the lead car is proceeding straight ahead without deviation. In the parent case of Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W. 2d 914, there was evidence that the defendant was attempting to pass, that the plaintiff's vehicle swerved into the right wheel

of defendant's truck and was over the center line at the time of the collision.

In Hughes v. St. Louis Public Service Co., Mo.App., 251 S.W.2d 360, the plaintiff pulled out from the curb and drove towards the streetcar track, looked in his side-view mirror and could not at that time observe the approaching streetcar. Plaintiff's car was struck from the rear after he had gone a short distance on the track.

In Jones v. Austin, Mo.App., 154 S.W.2d 378, at page 381, the court stated that the "very fact that the Robinson car was standing at a place it had a right to be, and that defendant's taxicab ran into it in the rear, raised an inference that a proper effort to control the taxicab was not made." Boresow v. Manzella, Mo., 330 S.W.2d 827, treated the res ipsa loquitur doctrine as available in a rear-end collision situation.

Witherspoon v. Guttierez, Mo., 327 S.W. 2d 874, presents a case very similar to the present one on the facts. The plaintiff in the lead car was negotiating a left turn off the highway at an intersection when she saw the lights of the defendant's following vehicle attempting to pass. It appeared that he would strike the plaintiff's car in the side and this would have happened but the plaintiff turned her car to the right and the right front and right headlight of the defendant's automobile struck the left rear of the plaintiff's car. Plaintiff's submission under the rear-end collision doctrine was approved and plaintiff's judgment was affirmed.

The duty of the following motorist is stated in 60 C.J.S. Motor Vehicles § 323, pp. 747–748, as follows: "The duty of an automobilist to keep a lookout, discussed generally supra §§ 284–287, imposes on him the obligations of observing vehicles on the road ahead of him and their movements and of being prepared for movements which might reasonably be anticipated. He must watch out for signals from the driver of the vehicle ahead and be prepared to avoid danger in case of any movement which is properly signaled. He must keep his car under control and operate it with care so that he will not run into vehicles ahead of him, and a collision with a vehicle ahead may constitute negligence or contributory negligence, imposing liability or barring recovery, as discussed infra § 328, provided the operator of the automobile ahead was driving in accordance with his rights."

Thus we see the decisions have held that submissible cases were made where the lead vehicle was proceeding directly ahead, standing still, preparing to turn left and starting a left turn. The evidence demonstrates without question that the plaintiff signaled her left turn in adequate time and distance, that she was properly starting her turn but had not reached a point where she was out from under the intended scope and protection of the rear-end collision doctrine as stated in the reported cases. On the issue of submissibility under the rear-end doctrine, I would hold that a case was unquestionably made.

We pass to the question of whether plaintiff's Instruction No. 3 is reversibly erroneous. The majority opinion quotes from Coit v. Bentz, Mo., 348 S.W.2d 941, 946, in justification of an appellate court deferring to a trial court's action in granting a new trial for an error in an instruction. The opinion fails, however, to refer to the limitation contained in this statement immediately following, 348 S.W.2d at page 946: "This does not mean, of course, that the trial court's construction can make a bad instruction good, or a good instruction bad, but its view is material as to the *prejudicial effect* on the jury of a *misleading* instruction or of one which constitutes a *misstatement*." Italics supplied. The trial court's ruling in the instant case simply was that "it was error to give Instruction No. 3." There is nothing in the record to indicate that the trial court relied on any discretionary grounds in granting the new trial.

As we understand it, the majority opinion affirms the trial court's ruling that Instruction No. 3 was erroneous on the ground

that it required "no finding as to where the vehicle was on the highway at the time it was hit, or even that it was on the highway, and it cannot be said that the instruction required a finding of plaintiff's position in a place where she had a right to be".

The instruction is set out in full in the majority opinion, but for convenient reference we state again its salient portions. The first paragraph of the instruction merely states the applicable degree of care and is not in question. The second paragraph (with emphasis added) instructs the jury "if you find and believe *from the evidence*" that on May 25, 1962, the plaintiff Clevenger "was proceeding in an easterly direction *on* Highway No. 36 *at the place mentioned in evidence*"; that she "was at all times in the exercise of the highest degree of care for her own safety" and that as she "proceeded eastwardly and turned to her left, or north" and as the defendant was operating his vehicle in an eastwardly direction and to the rear of plaintiff Clevenger's automobile "he negligently and carelessly allowed his automobile to run into and collide with the rear end of the automobile plaintiff Clevenger was operating", and if as a result of such negligence the plaintiff was injured, the jury's verdict should be in favor of the plaintiff. Contrary to the statement in the majority opinion, the instruction specifically requires the jury to find that the plaintiff was driving *on* the highway. Furthermore, the evidence describing the course of the plaintiff's automobile on the pavement was uncontradicted. There was only one version in evidence regarding the movement of plaintiff's automobile on the highway and its position when it was struck. The instruction required the jury to find that the automobile was "at the place mentioned in the evidence". Under the evidence that direction of the instruction could have only one meaning and was sufficient under the law as we shall develop more fully later.

The sufficiency of the instruction's hypotheses is buttressed by the further fact that the instruction commences with the phrase "if you find and believe from the evidence" and requires a finding that the plaintiff was "at all times in the exercise of the highest degree of care for her own safety". If the jury found that the plaintiff was not guilty of negligence, then it would necessarily have to find that she was in a position on the highway where she had a right to be especially since there was only one version as to where her car was and how it was operated. In Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 500 [2], this court stated: "Where there is no divergence in or denial of the essential facts, then the ultimate issue of the negligence pleaded and its being the proximate cause of the injury or damage alleged may be submitted *by reference to the facts and circumstances shown by the evidence without specific hypothesization* in the instructions. And, we may add, that if either of the parties deems a hypothesized fact or situation not to have been clearly or sufficiently hypothesized in any instruction, he should offer a clarifying or amplifying instruction." Italics supplied. Also in Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972, 977 [9], this court held that further hypotheses with respect to speed was not necessary because there was no conflict of factual theories stating: "There having been no real conflict of the factual theories relating to the physical setting and the circumstances of the collision relevant to the issue of speed, there was no real necessity of more particularized hypotheses of the facts than the hypotheses of Instruction No. 1."

Further in keeping with the holding in Hooper v. Conrad, it is aptly stated in Quigley v. St. Louis Public Service Co., Mo., 201 S.W.2d 169, 171–172: "Plaintiff's complaint is of nondirection, not misdirection; and plaintiff should have requested a clarifying instruction if desired."

We submit that in Instruction No. 3 the ultimate facts were sufficiently hypothesized in keeping with the instructions approved in the above cases, including Jones v. Central States Oil Co., 350 Mo. 91, 164

S.W.2d 914, 919–920 [5], and Witherspoon v. Guttierez, Mo., 327 S.W.2d 874, 880 [5]. In these circumstances, the verdict of the jury should not be disturbed. As well stated in Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 609 [9], " * * * recent holdings of our Supreme Court sound the timely warning that, in the absence of plainly confusing or misleading instructions manifestly infringing substantial rights in a demonstrably substantial manner, there is no error 'materially affecting the merits of the action' [Rule 83.13(b); Section 512.160(2)] and the granting of a new trial is neither required nor justified. Kelly [Kelly v. Kansas City Public Service Co., Mo.], supra, 335 S.W.2d [159] loc. cit. 164(8); Stewart v. Boring, Mo., 312 S.W.2d 131, 134; McGhee v. Jones, Mo., 336 S.W.2d 722, 726."

As stated in the majority opinion, if the case is remanded for a retrial under the rear-end collision doctrine, it will be submitted under Missouri Approved Instruction 17.16, the verdict-directing instruction in a rear-end collision case, which simply reads as follows:

"Your verdict must be for plaintiff if you believe:

"First, defendant permitted his automobile to come into collision with the rear of plaintiff's automobile, and

"Second, defendant was thereby negligent, and

"Third, as a direct result of such negligence, the plaintiff sustained damage".

The Committee's Comment states: "1. While there is language in the cases cited below suggesting that the collision itself shows negligence, the safer course is to further hypothesize negligence." Four leading Missouri cases are cited in support of this proposition. The comment indicates the strength of the inference authorized by the ultimate fact of a rear-end collision.

The instant case was tried before the effective date of the Missouri Approved Instructions, but the new instructions do not change the law, only the manner of submitting the issues. As we have demonstrated, the instruction as given is sufficient under the instruction practice existing at the time of trial. However, MAI No. 17.16 furnishes less factual guidance for the jury and demonstrates that the instruction in question could not be misleading or prejudicial. All that is required under MAI 17.16 is a finding by the jury of the ultimate fact that the defendant permitted his automobile to come into collision with the rear of plaintiff's automobile and that the defendant was thereby negligent. Instruction No. 3 covers all of this and more. To require a new trial in these circumstances seems to be a vain and useless thing.

Having these views, I would reverse the judgment of the trial court and remand the cause with directions to reinstate the verdict. For the reasons given, I respectfully dissent.