Audrey ROSENFELD, Appellant,

v.

Leroy W. PETERS, Respondent.

No. 46952.

Supreme Court of Missouri,

Division No. 1.

July 13, 1959.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 14, 1959.

Librach, Heller & Byrne, William P. Byrne, St. Louis, for appellant.

Coburn & Croft, Joseph M. Kortenhof, St. Louis, for respondent.

HYDE, Presiding Judge.

Action for $25,000 damages for personal injuries sustained in a collision of automobiles. Verdict and judgment for defendant and plaintiff has appealed.

The case was submitted solely upon humanitarian negligence and the substantial questions raised are the giving of Instruc-

tions 2 and 4 and the refusal of three instructions requested by plaintiff. Therefore, a brief statement of the facts which the evidence of each party tended to show will be sufficient.

Plaintiff was riding west with Aaron Siegel on Highway 40, about 6:30 P.M. standard time, June 15, 1957. The highway had separate double lanes for eastbound and westbound traffic, each 20 feet wide, with a grass dividing strip between. Siegel turned the car onto a crossover, at least 10 or 12 feet wide, to go to the eastbound lanes. It was a dry, clear day. Plaintiff's evidence was that Siegel came to an absolute stop; that both he and plaintiff looked west and saw defendant's car near the top of the hill at a distance they each estimated as about 1000 feet west of them; and that Siegel then drove into the inside eastbound lane. They both said that Siegel's car turned into the inside (north) lane and did not get into the outside (south) lane; and that defendant's car struck Siegel's car after it had moved from one to two car lengths. They estimated the speed of Siegel's car during that time as from five to ten miles per hour; but were not able to estimate the speed of defendant's car. (Defendant said it was 65 miles per hour.) Neither plaintiff nor Siegel looked at defendant's car again after they first saw it; and they heard no horn or brakes. Plaintiff also had testimony of an expert witness, figuring from defendant's speed and plaintiff's evidence as to the speed of and distance traveled by Siegel's car, that defendant's car could have been as much as 675 feet away when Siegel's car started; and that, at 65 miles per hour, defendant's car could have been stopped in 328 feet.

Defendant's evidence was that he was driving east at 65 miles per hour in the outside (south) lane; that he saw Siegel's car stop in the crossover when he was about 300 feet west of it; that he took his foot off the accelerator when he first saw it but accelerated again when he saw it stop; that when he was 150 feet west of the crossover, Siegel's car started into the eastbound lanes; and that when the entire car was on the highway he couldn't have been more than 60 or 70 feet from him. Defendant said Siegel's car made a wide left turn blocking both eastbound lanes with about half of the car in each; that he could not turn to the right (onto the shoulder) because of a gully next to the road; but that he did sound his horn, apply his brakes and swerve to the left, trying to go into the center parkway. Defendant said he had reduced his speed from 65 miles per hour to 40 miles per hour at the time of the collision, and that at the point of impact Siegel's car was facing in a southeastwardly direction at an angle of 30 to 45 degrees. Defendant's evidence was that the collision occurred 6 to 8 feet east of the east edge of the crossover (plaintiff's evidence was 20 to 25 feet east) and that about one foot of the right front of his car struck about two feet of the left rear of Siegel's car.

Instruction 1, authorizing a verdict for plaintiff, submitted conjunctively failure to slacken speed and stop so that it really amounted to a submission of failure to stop. Instructions 2 and 4, given at defendant's request were as follows:

2. "The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in the evidence, Mr. Peters was operating his automobile eastward on the east bound portion of Highway 40 and that the plaintiff was a passenger in an automobile being operated by Mr. Siegel on a cross-over between the east bound portion and west bound portion of said Highway 40, and if you further find that Mr. Siegel entered upon the east bound portion of said Highway 40 at a time when Mr. Peters' automobile was approaching so closely as to constitute an immediate hazard, (then you are instructed that Mr. Peters had the right of way to proceed over and across the intersection formed by said east bound portion of Highway 40 and said cross-over and

if you further find and believe that Mr. Siegel failed to yield said right of way to Mr. Peters,) and if you further find that such failure on the part of Mr. Siegel was the sole cause of the collision mentioned in the evidence and that Mr. Peters was not negligent under any of the other instructions given you by this Court, then you are instructed that you must return your verdict in favor of Mr. Peters and against the plaintiff." (Parentheses inserted.)

4. "The Court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in the evidence Mr. Siegel's automobile came into a position of imminent peril, if you so find, and if you further find that at that time Mr. Peters' automobile was so close to Mr. Siegel's automobile that Mr. Peters was not able to avoid colliding with the Siegel automobile, with the means and appliances at hand, and with reasonable safety to himself and his automobile, then you are instructed that you must return your verdict in this case in favor of Mr. Peters and against the plaintiff."

 Instruction 2 does not measure up to the requirements of a proper sole cause instruction in a humanitarian negligence case because it does not hypothesize facts showing that there could have been no humanitarian negligence on defendant's part. See Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, 748, 750, and cases cited; Sheerin v. St. Louis Public Service Co., Mo.Sup., 300 S.W.2d 483, 488. Instruction 2 states that defendant had the right of way over Siegel (based on Sec. 304.021(4), RSMo, 1957 Supp., V.A.M.S.) which is not a defense in a humanitarian negligence case. See Catanzaro v. McKay, Mo.Sup., 277 S.W.2d 566, 570. The only facts it really hypothesizes are that Siegel failed to yield the right of way and entered the highway when defendant had the right of way. Thus it permits defendant to be relieved from liability because of negligence that may have occurred before his duty under the humanitarian rule arose and ignores

and fails to hypothesize facts showing what defendant could or could not have done after he saw or could have seen (in the exercise of the highest degree of care) Siegel's car come into a position of imminent peril. (It was for the jury to decide when that occurred.) If defendant had left out the clauses concerning right of way (which we have enclosed in parentheses) and had drawn this instruction to submit that as defendant approached close to the crossover, Siegel suddenly drove his car from a stopped position on the crossover onto the highway closely in front of defendant's car; and then required a finding that this was negligence of Siegel which was the sole cause of the collision and that defendant was not guilty of any negligence submitted in any other instructions, it would have been a good sole cause instruction. Janssens v. Thompson, supra, 228 S.W.2d loc. cit. 747 and cases cited. As given, it does not hypothesize facts showing that the humanitarian rule could not apply but instead conveys the idea that failure of Siegel to yield the right of way to defendant would be a complete defense, regardless of what defendant could have done thereafter.

It is sometimes overlooked "that any defendant's instruction based on the theory that a plaintiff's injuries were caused solely by his own negligence actually submits a converse situation from the plaintiff's humanitarian submission;" and this is likewise true as to the sole negligence of a third party. Janssens v. Thompson, supra, 228 S.W.2d loc. cit. 750; Happy v. Blanton, Mo.Sup., 303 S.W.2d 633, 637. In the Happy case, 303 S.W.2d 637, we held the sole cause instruction therein failed to hypothesize fact showing a sole cause situation saying: "[A]n instruction submitting the issue of nonliability on the part of a defendant because the negligence of a third party was the sole proximate cause of plaintiff's injuries must do more than direct a verdict for that defendant only upon a finding that the third party was in some manner negligent." As to a sole

cause instruction, we further pointed out therein: "This latter form of an instruction, as contrasted to a converse instruction, concedes that the injuries to plaintiff resulted from the negligence of someone, and it authorizes a finding by the jury for the defendant only if it finds that the negligence of the plaintiff, or someone other than the defendant, was the sole proximate cause of the injuries, and also that defendant was not negligent, or if he was negligent that his negligence was not concurring negligence. Therefore, if the defendant undertakes to absolve himself from liability to plaintiff on the basis of sole cause negligence, he thereby assumes the burden of hypothesizing a statement of facts, supported by the evidence, from which a jury could find that not only did his negligence not contribute in causing plaintiff's injuries, but in addition thereto that the sole proximate cause of plaintiff's injuries was the negligence of someone other than him, and the hypothesization of facts in the instruction, or by proper reference to other instructions, must be complete in both respects." (As to true converse instructions that do not require hypothesization of facts see also Liebow v. Jones Store Co., Mo.Sup., 303 S.W.2d 660, 663; Schaefer v. Accardi, Mo.Sup., 315 S.W.2d 230, 234.) We must and do hold that giving Instruction 2 was prejudicial error.

▉▉ As to Instruction 4, plaintiff complains (1) that it failed to require exercise of the highest degree of care by defendant to stop his car; and (2) that it failed to include the element of discoverable peril. These are not valid objections. The first omission is really in plaintiff's favor for the reasons we thus stated in Burow v. Red Line Service, 343 Mo. 605, 122 S.W.2d 919, 920: "Logically considered this instruction is more favorable to plaintiff than it would have been if the requirement as to stopping or checking speed had been limited by inserting the words plaintiff says should have been inserted. This is true because the instruction as written only authorizes a verdict for defendant if it was impossible, upon any hypothesis, for the bus driver to have stopped or checked speed." Plaintiff's second objection was considered and properly ruled in Welch v. McNeely, Mo.Sup., 269 S.W.2d 871, where a similar converse instruction was discussed. See also Fantin v. L. W. Hays, Inc., Mo.Sup., 242 S.W.2d 509; Fisher v. Williams, Mo., 327 S.W.2d 256, decided concurrently herewith. Likewise, as pointed out in Welch v. McNeely, supra, the omission of the requirement of "saw or could have seen" cast an additional burden on defendant, because logically it authorizes a verdict for plaintiff if she came into a position of imminent peril, regardless of when or whether defendant could have discovered such position of peril, unless such peril arose at a time when defendant's car was so close that defendant thereafter was not able to avoid a collision under any conceivable circumstances or by any action, not even limited to ability to stop as submitted in Instruction 1.

▉▉ Since this case will likely be retried, we will consider the other contentions made by plaintiff. Instruction C, offered by plaintiff, told the jury that negligence of the driver of the automobile could not be imputed to plaintiff. It was properly refused, especially since the case was submitted solely on humanitarian negligence where contributory negligence could not be an issue. Plaintiff cites Watts v. Moussette, 337 Mo. 533, 85 S.W.2d 487, 492, which was not a humanitarian negligence case; and what was said there about imputed negligence was dictum which has not been followed. In Hall v. Hannibal-Quincy Truck Line, Mo.Sup., 211 S.W.2d 723, 727, we held that even in a primary negligence case, when contributory negligence was not an issue, it was not error to refuse an instruction on imputed negligence, citing Mendenhall v. Neyer, 347 Mo. 881, 149 S.W.2d 366, 372, and Bebout v. Kurn, 348 Mo. 501, 154 S.W.2d 120, 127. See also Schlemmer v. McGee, Mo.Sup., 185 S.W.2d 806, 808. We hold it was not error

to refuse Instruction C under the submission made in this case.

█ As argued by plaintiff, she would have been entitled to also submit primary negligence, and this would have brought in her contributory negligence as a defense (she saw defendant's car and did not warn Siegel; although she saw him look toward it, she did not know he saw it) but to submit primary negligence it was necessary to offer proper instructions. Instruction G, offered by plaintiff, referred to by plaintiff as a rear end collision instruction and claimed to be authorized by our decisions in Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914; State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68, was not a proper instruction. This instruction (leaving out the "if you find's") submitted that "plaintiff was a passenger in an automobile which was being driven in an easterly direction over and along Highway 40 at the place mentioned in evidence, * * * that the defendant drove his automobile in an easterly direction over and along said Highway, into the rear of the automobile with plaintiff therein, and * * * that the defendant caused, suffered and permitted the front end of his automobile to come in contact with the rear end of the automobile with plaintiff therein, and was negligent." The trouble with this instruction is that it did not (as the Jones case instruction did) "require a finding of plaintiff's position in a place where he had the right to be, operating his car properly as required by the highest degree of care, together with his environment and other facts of the situation which showed he could not have been negligent, and then required the finding of the affirmative act by the defendant of driving its truck into that part of the highway and against the rear end of plaintiff's car." 164 S.W.2d loc. cit. 920. Considering that plaintiff was a passenger and not operating the car, to make this instruction comply with the requirements of the Jones case, findings should have been required that Siegel's car was at all times

in the inside (north) lane of the eastbound portion of the highway (as plaintiff and Siegel testified but defendant controverted) and that defendant came from the outside (south) lane (in which the evidence shows he was driving) onto the inside lane and carelessly caused or permitted his car to strike the rear end of the Siegel car. The instruction in the Spears case (210 S.W.2d loc. cit. 70) hypothesized defendant's streetcar operating behind the plaintiff's car, in a place where plaintiff had a right to be, overtaking the plaintiff's car and then carelessly allowing it to run into the rear of the plaintiff's car. The instruction in the Spears case hypothesized a clear and simple situation of one vehicle being operated for a considerable distance behind another and overtaking it, which was not true in this case where the Siegel car turned in abruptly from the side and, according to defendant's evidence, blocked both of the eastbound lanes of the highway. See also Evans v. Quentin, Mo.Sup., —— S.W.2d ——, decided concurrently herewith, in which it was submitted that the plaintiff's car, stopped for a stop light, ahead of defendant's car, in a line of cars, was struck in the rear by the defendant's car before it ever moved. We hold that it was not error to refuse Instruction G.

██ It is likewise our view that Instruction O, offered by plaintiff was not a proper primary negligence instruction. Like Instruction G it did not properly hypothesize the facts actually shown by the evidence; and it also contained a very general submission ("failed to have his automobile under control so that it could be stopped on the first appearance of danger and was negligent") which at least was confusing and could be construed as a roving commission. See Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872; Dahlen v. Wright, 361 Mo. 524, 235 S.W.2d 366. Plaintiff's remaining contention that the court erred in overruling her motion to strike the testimony of defendant that he was 150 feet from the crossover, when Siegel started to drive out, is wholly with-

out merit. Plaintiff's claim that this was contrary to physical facts depends on the calculations of her expert witness which the jury did not have to accept, especially since these calculations did not consider defendant's testimony that he had reduced his speed to 40 miles per hour before the impact or that defendant's evidence as to the movement of Siegel's car and the place of the collision was different from that assumed in these calculations.

The judgment is reversed and the cause remanded.

All concur.