Clarence E. **MUELLER** et ux., Appellants,

v.

Franklin Oliver **STORBAKKEN** et al., Respondents.

No. 60606.

Supreme Court of Missouri, En Banc.

June 29, 1979.

John C. Milholland, Harrisonville, for appellants.

Jack G. Beamer, Lee E. Wells, Kansas City, for respondents.

RENDLEN, Judge.

This appeal turns on whether the so-called "rear-end collision doctrine" was available as a theory for the defense and if so whether defendants' verdict-directing instruction, MAI 17.16 modified, properly submitted the "doctrine." [1]

Plaintiffs Mueller, husband and wife, sought damages from defendants Franklin Storbakken and the Land Construction Co. for injuries sustained when the front of the Mueller automobile struck the rear of the Land Construction Co. vehicle operated by defendant Storbakken. Judgment was entered on the jury's verdict favorable to both named defendants and plaintiffs appealed. Plaintiffs first filed their notice of appeal in this Court contending that MAI 17.16 changed the substantive law in violation of art. V, § 5, of the Missouri Constitution. We transferred the cause to the Court of Appeals, Western District, for the reason no construction of the constitutional provision was required. The Court of Appeals reversed the judgment of the trial court and following that decision the case was transferred for consideration here as though on original appeal, art. V, § 10, Mo.Const.; Rule 83.09. We affirm.

The evidence, taken most favorably to the defendants' verdict, fairly shows the following: The defendant Land Construction Company, owner of the lead vehicle involved in the collision, was the prime contractor to resurface and widen the shoulders on the westbound dual lanes of the four-lane divided U.S. Highway 50 for twenty-two miles in western Missouri and defendant Storbakken was the project superintendent. Though general work on the project had been temporarily halted, signs warning of construction ahead, flagman, and one-way travel, remained in place. The

---

1. Defendants' main verdict director combined in modified form MAI 17.16 and 32.01.

construction required drilling the asphalt for test core samples at several points and in the performance of that task defendant Storbakken arranged for one Taylor, a subcontractor's employee, to drive a pickup truck with the core drill in tow to the sites designated for bore operations. As Taylor stopped to drill each core sample, Storbakken, following in an El Camino passenger pickup, stationed himself on the highway as flagman some three hundred feet behind.

Taylor had concluded the second of the test bores on the crest of a small hill or rise and was proceeding westwardly toward the next site on U.S. Highway 50 when trouble developed with the hitch on the rig he had in tow, causing him to stop his truck in the northernmost westbound lane some three hundred feet west of the hill crest where he had just drilled. Because the next site was some distance away, Storbakken, also westbound and some distance to the east, did not know Taylor had stopped on the highway until the pickup and drill rig came into Storbakken's view as he reached a point about seventy-five feet east of the crest of the rise. Storbakken commenced to slow and as he topped the rise, moved slowly toward the Taylor vehicle standing in the lane ahead. About the time Storbakken saw Taylor stopped on the highway, he saw another westbound car two or three hundred feet behind him swerve south from the northernmost lane around his El Camino to avoid impact and continued to the west. Storbakken for the first time then observed the Muellers' automobile which had been following about one hundred feet behind the intervening car. He saw the Mueller car apply its brakes and approach the rear end of his vehicle in a skid. It occurred to Storbakken to accelerate or take other evasive action, but concern for the safety of Taylor ahead and other traffic dissuaded him. The Mueller car, making 126 feet of skid marks, collided with the rear of Storbakken's El Camino at a point about 150 feet west from the crest of the rise and about 150 feet east of Taylor's truck and drill rig. Defendant Storbakken contended his vehicle was moving at the time of collision but Clarence Mueller testified he was stopped.

The testimony of plaintiff Clarence Mueller was that he was driving up the hill at a speed between 60 and 65 miles per hour though the investigating officer related that Mueller told him his speed was then between 65 to 70 miles per hour. In either case, however, Mueller was within the 70 mile per hour limit then in effect. Before he ascended the hill, Mueller was overtaken on the left by the other westbound vehicle which, still on the up slope of the small rise, re-entered the northernmost westbound lane about 125 to 150 feet ahead of the Mueller car. Plaintiff further testified he remained about that distance behind the other car and when the other car reached the top of the hill, he saw its tail lights flash and watched it swerve into the left lane. Mueller then saw the Storbakken truck for the first time and applied his brakes with all force in an attempt to stop. Storbakken and Mueller both testified that neither had a view of the other until the westbound car between them swerved.

The rear of the Storbakken car was equipped with four-way flasher lights which were in operation at the time of these events. Line of sight tests conducted by the officer at the scene disclosed that the flasher tail lights on an El Camino of the sort driven by Storbakken positioned at the point of impact could be seen for 324 feet from the east or 174 feet east of the crest of the rise as one proceeded westward.

At the close of the evidence, the court submitted as defendants' contributory negligence instruction the "rear-end doctrine" as embodied in MAI 17.16.

The fountainhead of the "rear-end collision doctrine" in Missouri [2] has been said to

2. In most other states where such cases have arisen, a Missouri "rear-end doctrine" case is submitted under other theories of specific negligence (failure to maintain a reasonable distance ahead, etc.). 2 D. Blashfield, Automobile Law and Practice §§ 113.12–.17 (3d ed. 1965). In appropriate cases, res ipsa loquitur is used. *Compare* 11 *id.* § 417.2 n. 69 *and* § 418.2 n. 49 (rev. 3d ed. 1977) *with* 11 *id.* § 418.3 n. 78. *See also* Jacobson, *The Rear-End Collision Doctrine*

be *Jones v. Central States Oil Co.,* 350 Mo. 91, 164 S.W.2d 914 (1942). *See Doggendorf v. St. Louis Pub. Serv. Co.,* 333 S.W.2d 302, 305 (Mo.App.1960). *Central States* did not announce its holding as new "doctrine," nor was it the first case in which the rear-end theory was discussed. *See Hollensbe v. Pevely Dairy Co.,* 38 S.W.2d 273, 276 (Mo. App.1931); *Jones v. Austin,* 154 S.W.2d 378, 381 (Mo.App.1941). However, *Central States* apparently is the first instance in which a plaintiff submitted the "rear-end doctrine" in a verdict-directing instruction.

Originally the cases, including *Central States,* distinguished the rear-end "doctrine" from res ipsa loquitur, insisting that the "doctrine" submitted specific as contrasted with general negligence. *Central States,* 164 S.W.2d at 918; *State ex rel. Spears v. McCullen,* 357 Mo. 686, 210 S.W.2d 68, 70–71 (banc 1948). In recent cases, however, the "doctrine" has been interpreted more broadly and it has been said, "A rear-end submission may be justified in automobile collision cases under circumstances warranting an inference of defendant's negligence. As said in *Lichtenberg v. Hug,* 481 S.W.2d 527, 529 (Mo.App.1972), '. . . the doctrine approaches—if it does not reach—that of *res ipsa loquitur* in that under the circumstances in *Jones [v. Central States Oil Co.]* the fact of collision bespeaks the defendant's negligence.'" *Barlow v. Thornhill,* 537 S.W.2d 412, 421 (Mo. banc 1976).

■■■ It follows from the recent development of the rear-end "doctrine" that its applicability is determined at trial in much the same manner courts approach the use of res ipsa loquitur in other situations. The court determines from all the evidence, taken in the light most favorable to the propo-

nent of the theory, that the collision with the rear of the lead vehicle may be found to have occurred under circumstances which the court believes would permit the jury to draw an inference of negligence without proof of what action or omission comprised the negligence by the driver of the following vehicle.[3] Such negligence can arise in relation to a plethora of duties imposed on a driver as he approaches hills or moves in the same direction as other vehicles; the situation existing from moment to moment determines the nature of those duties, which our law describes simply as the "care that a very careful and prudent person would use under the same or similar circumstances." MAI 11.01. Thus a person has a duty not to follow a preceding vehicle too closely, *Matthews v. Mound City Cab Co.,* 205 S.W.2d 243, 249 (Mo.App.1947); *Binion v. Armentrout,* 333 S.W.2d 87 (Mo.1960), a duty not to ascend a hill at too great a speed, *Lyon v. Southard,* 323 S.W.2d 785 (Mo.1959), and a duty to keep a lookout when approaching the crest of a hill, *Hutson v. Highley,* 384 S.W.2d 278 (Mo.App.1964); but a driver is not required to anticipate *every* danger which he may come upon over the crest of a hill, *Scherffius v. Orr,* 442 S.W.2d 120 (Mo. App.1969). Such general rules neither exhaust the duties of a driver in any particular situation nor admit of easy application after an accident has occurred. The rationale of the rear-end "doctrine," when the evidence taken favorably to its proponent allows its submission, is simply that the party in the vehicle behind has a view of what is in front and can better explain why his vehicle struck the rear of the car ahead; the proponent is not required to identify in the verdict-directing instruction the act

---

as a Theory of Negligence in Kansas, 28 U.M.K. C.L.Rev. 41, 51–52 (1960) (comparing Kansas and Missouri law).

**3.** In making this determination the trial court should be guided by appellate decisions as to when the rear-end "doctrine" is available, insofar as the decisions do not conflict with this case. *Compare, e. g., Todd v. Presley,* 413 S.W.2d 173 (Mo.1967) (not submissible when car ahead turned left onto highway and was followed by defendant only 100 feet), and *Co-*

*sens v. Smith,* 528 S.W.2d 772 (Mo.App.1975) (not submissible when defendant was struck in rear and propelled into plaintiff ahead), *with Witherspoon v. Guttierez,* 327 S.W.2d 874 (Mo. 1959) (submissible when car ahead deviated only slightly from straight forward course), and *Wagoner v. Hurt,* 554 S.W.2d 587 (Mo.App. 1977) (submissible when car ahead turned to right onto highway and was followed by defendant more than 100 yards).

constituting the breach of duty or the particular duty breached.

■ In the case at bar, the circumstances relevant to the submission of the rear-end theory begin from the moment the auto in front of the Muellers flashed its brake lights and swerved into the left lane to avoid the Storbakken vehicle. This revealed the Muellers to be in line behind Storbakken and both drivers testified that was the moment each first saw the other. The evidence most favorable to Storbakken, as proponent of the theory, indicates that Mueller, when three to four hundred feet behind Storbakken, was traveling 60 to 65 miles per hour and Storbakken was moving forward slowly with his four-way flashers operating.[4] The Mueller vehicle left 126 feet of skid marks, indicating it traveled 174 to 274 feet during the time Mr. Mueller reacted and chose his course of action before the skid. Assuming three-fourths of a second for reaction time, *Koogler v. Mound City Cab Co.*, 349 S.W.2d 233, 237 (Mo.1961), at 60 m. p. h. the Mueller vehicle traveled 66 feet[5] while he reacted, and 108 to 208 feet remained within which Mueller could have acted to avoid the collision before his vehicle started its skid. This 108 to 208 feet expressed as time based on a speed of 60 m. p. h. is roughly one and one-fourth to two and one-third seconds, representing the time available to Mr. Mueller to act in avoiding the Storbakken vehicle ahead, exclusive of the time it took to recognize the danger and the time his vehicle actually skidded. From this view of the evidence we cannot say it was error to submit the rear-end collision "doctrine" as a theory for the defense.

■ Appellants next attack the validity of MAI 17.16 on which defendants' verdict-director was based, asserting that it changes substantive law in contravention of the limits of this Court's rulemaking power under art. V, § 5 of the Missouri Constitution.[6] As submitted, the challenged instruction reads:

Your verdict must be for defendants on Count I and Count III if you believe: First, plaintiff Clarence Mueller's automobile came into collision with the rear of defendants automobile; and

Second, plaintiff Clarence Mueller was thereby negligent; and

Third, such negligence of plaintiff Clarence Mueller directly caused or directly contributed to cause any damage plaintiff Clarence Mueller may have sustained. [MAI 17.16 (modified) and 32.01 (modified).]

Appellants vigorously contend this Court's cases have established two elements of the rear-end "doctrine" which MAI 17.16 erroneously fails to embody. The first is that the proponent of the theory be found to have been operating his vehicle with the highest degree of care. In other words, according to plaintiffs-appellants, the proponent of the doctrine (here the defendant) has the burden of proving his freedom from negligence and that element should have been included in defendants' main verdict-director. However, the two cases on which appellants rely announce no such require-

4. The trooper's line-of-sight experiment revealed that Storkbakken's flashers could be seen 324 feet from the rear of the point of impact. However, Storbakken testified he moved forward some fifty feet further down the rise after he first noticed the Mueller vehicle before he was struck. The trooper's measurement thus is corroborative or at least not in conflict with Storbakken's estimate of the distance between himself and the Muellers.

5. 60 miles per hour is the equivalent of 88 feet per second.

6. Art. V, § 5, read in part as follows prior to the amendment effective January 2, 1979: "The supreme court may establish rules of practice and procedure for all courts. The rules shall not change substantive rights, or the law relating to evidence, the oral examination of witnesses, juries, the right of trial by jury, or the right of appeal."

Acting under the authority of art. V, § 5, this Court promulgated the Missouri Approved Instructions (MAI), including MAI 17.16 (later amended on a point not material in this case), on May 20, 1964, and on the same date amended Rule 70 to mandate their use. Missouri Supreme Court Committee on Jury Instructions, Missouri Approved Jury Instructions xxxi (2d ed. 1969).

ment. In *Central States,* this Court ruled adequate plaintiff's pre-MAI verdict-director which (paraphrased to omit unnecessary verbiage) required the jury to find the following in order to render a verdict for a rear-ended plaintiff:

1. Plaintiff was driving in his lane on a two-lane highway. [In the case sub judice, the presence of a divided four-lane highway neither diminished the following car's duty nor increased that of the lead car.]
2. Defendant was driving behind plaintiff in that lane.
3. Defendant "carelessly and negligently caused, allowed and permitted [his vehicle] to run into, strike and into collision [sic] with the rear end" of plaintiff's vehicle.
4. The collision caused plaintiff's injuries.

164 S.W.2d at 916–17. In view of the contributory negligence instructions submitted by defendant in *Central States,* the court there added the following proviso at the end of the verdict-director: "provided you further find . . . the plaintiff . . was exercising the highest degree of care in driving and operating the said pickup truck hereinbefore mentioned." [7] *Id. Central States* is misconstrued if the last-quoted proviso is read as a necessary element of plaintiff's case. Plaintiffs-appellants also

point to later language in *Central States* which reads:

Instruction No. 1, here, did require a finding of plaintiff's position in a place where he had the right to be, operating his car properly as required by the highest degree of care, together with his environment and other facts of the situation which showed he could not have been negligent, and then required the finding of the affirmative act by the defendant of driving its truck into that part of the highway and against the rear end of plaintiff's car.

164 S.W.2d at 920. This quoted language does not set forth the instruction but instead attempts to explain the instruction's meaning. The holding of the case that the instruction was adequate did not elevate the proviso added at the end as to the "highest degree of care" to the status of a necessary element of the plaintiff's case on which plaintiff was required to bear the burden of persuasion.

Appellants also cite *Rosenfeld v. Peters,* 327 S.W.2d 264, 269 (Mo.1959), in which plaintiff's vehicle turned left onto a highway in front of the defendant's auto which then struck the plaintiff's vehicle in the rear. The holding in *Rosenfeld,* however, concerned defendant's pre-MAI "sole cause" [8] instruction which countered plaintiff's humanitarian theory of recovery. The court's opinion that plaintiff's proposed

7. The language of the instruction as quoted in *Central States* read, "And further find from the evidence that on said second day of May, 1940, between seven and eight o'clock A.M., the said plaintiff was driving said pickup truck in a southerly direction on said Federal Highway No. 63 and on the west and right hand side of the pavement on said highway and west of the centerline thereof, if you so find, at a point on said highway north of Axtel, Macon County, Missouri, if it was, mentioned in the evidence, and further find and believe from the evidence that on said May 2, 1940, and at said time and place, if you so find, the defendant was driving and operating a motor vehicle, to-wit, the motor oil transport mentioned in the evidence, southwardly on said Federal Highway No. 63 behind the said pickup truck plaintiff was driving, if you so find, and further find and believe from the evidence that on said day and at said time and place on said highway hereinbefore mentioned, the defendant carelessly and negli-

gently caused, allowed and permitted said transport truck, if you so find, to run into, strike and into collision with [sic] the rear end of the said pickup truck plaintiff was driving, if you find from the evidence that it did so, and further find and believe from the evidence that as a direct and proximate result thereof plaintiff was injured, * * * then your verdict will be for plaintiff, provided you further find and believe from the evidence that at the time of and prior to said collision, if you so find, the plaintiff, Burley Jones, was exercising the highest degree of care in driving and operating the said pickup truck hereinbefore mentioned." (Deletion in original.)

8. The use of "sole cause instructions" has been prohibited since January 1, 1965, the effective date of the Missouri Approved Instructions. MAI 1.03.

rear-end "doctrine" instruction was properly refused by the trial court entered the case only as guidance to the court below on retrial. Explaining why the proposed rear-end instruction was wanting, the court merely quoted the attempted explanation from *Central States*, 164 S.W.2d at 920 (quoted last above) that appellants in this case have relied on; no other explanation was offered for the opinion. Considering that this portion of *Rosenfeld* did not tie *Central States* to the instruction there approved, *Rosenfeld* cannot be read as authoritative precedent for appellants' argument. Appellants cite no other cases for this particular point. Hence it cannot be said from the cited cases that MAI 17.16 fails to embody an essential element of the rear-end "doctrine" because it does not expressly submit the proponent's duty to exercise the highest degree of care.

The second attack appellants make on MAI 17.16 is the same in effect as that we have just discussed. The argument is that paragraph "First" does not require a finding that the proponent's vehicle was "in a place where [it] had the right to be." *Central States*, 164 S.W.2d at 920. This language comes from the same portion of *Central States* we quoted above and significantly even the pre-MAI instruction there at issue did not include it. The phrase urged as necessary by appellants, requiring the front vehicle to be "in a place where [it] had the right to be," can be taken at least two ways: it may express in a different set of words that the lead driver must prove he was exercising the highest degree of care,

in which case our previous discussion disposes of the claim, or it may express the positional aspect of the rear-end "doctrine," which appellant asserts would require there be an examination and recital of the facts in the instruction as to the respective positions of the vehicles. If plaintiffs-appellants are referring to this second meaning, their contention fails because the position of the automobiles is but one, albeit an important one, of the evidentiary matters to be considered by the judge in determining as a matter of law whether the case may properly be submitted under the rear-end collision theory. The judge must decide whether the circumstances as shown by the evidence most favorable to the proponent of the rear-end instruction "bespeak negligence." *Lichtenberg v. Hug*, 481 S.W.2d 527, 529 (Mo.App.1972), *quoted in Barlow v. Thornhill*, 537 S.W.2d 412, 421 (Mo.banc 1976). Hence MAI 17.16 properly does not include such language.

Appellants rely on the language in the *Central States* and *Rosenfeld* opinions discussed above relative to the first attack on MAI 17.16, and contend that language also supports this, their second attack on the instruction. Appellants further rely on *Clevenger v. Walters*, 419 S.W.2d 102, 105–06 (Mo.banc 1967), for their argument that MAI 17.16 changed the substantive law by failing to submit whether the front vehicle was "in a place where [it] had the right to be." *Clevenger v. Walters* held, as appellants correctly state, that the rear-end "doctrine" did require such an element be submitted to the jury.[9] However, *Clevenger*

9. The majority in *Clevenger* relied on the following language of a certain passage in *Central States* which attempted to explain how the rear-end theory represented specific negligence: "Here the ultimate fact, 'negligently caused' the transport truck 'to run into * * the rear end of the pickup truck,' is no doubt stated in a way that would be too general if it stood alone. But when the requirements are added that it must be further found that the transport truck was being driven behind plaintiff's car, and that his car was 'west of the center line' when struck, then a rather narrow and simple issue was presented. This [issue] was: Did defendant's driver run its truck into the rear end of plaintiff's car while plaintiff's

car was being properly driven in the part of the highway where it should have been and was entitled to be? This meant: Did defendant's driver so carelessly guide its truck that he drove it against the rear end of plaintiff's car, in attempting to drive around it as he said he intended to do? Surely this was an issue which the jury could understand as well as excessive speed or any of the matters of omission suggested as submissible by defendant." 164 S.W.2d at 918. We are persuaded that the true meaning of the instruction at issue in *Central States* is contained in the sentence, "Did defendant's driver so carelessly guide its truck that he drove it against the rear end of plaintiff's car, in attempting to drive around it as he

handed down September 11, 1967, was not controlling law when MAI 17.16 was approved May 20, 1964, effective January 1, 1965. At the time MAI 17.16 became effective, it did not change the controlling substantive law as we have interpreted it from the *Central States* case, the "fountainhead" and oft-cited authority for subsequent cases. It is more correct to view *Clevenger* as a change in the substantive law of the rear-end "doctrine." In any case, MAI 17.-16 cannot be held to have changed existing substantive law based on its failure to include a requirement laid down in a subsequent decision and *Clevenger* thus does not help appellants' constitutional claim. We hold that MAI 17.16 represented (and still represents) a correct expression of the substantive law and that to the extent *Clevenger v. Walters* and other cases hold differently they are no longer to be followed, and we approve the trial court's submission under MAI 17.16 in this case. We subscribe to the comment of the Court of Appeals in *Warriner v. Eblovi*, 485 S.W.2d 700, 703 (Mo.App.1972), referring to MAI 17.16: "The spirit and purpose of MAI in submitting only ultimate issues is complied with in [MAI 17.16]."

■ Though the contributory negligence instruction, MAI 17.16 as modified, was directed only against Clarence Mueller's claims for his own injuries (Count I) and his loss of consortium (Count III), appellants assert that giving the instruction also led to error in regard to Marie Mueller's claim for her injuries (Count II).[10] They contend that under MAI 17.16 counsel for defendants was erroneously permitted to argue to the jury that Mrs. Mueller's conduct as well as Mr. Mueller's was negligent, notwithstanding that the instruction submitted only the contributory negligence of Clarence Mueller. Insofar as appellants contend that the alleged defects of MAI 17.16 allowed such argument and thus caused the alleged error, our approval of MAI 17.16 disposes of the contention. Insofar as appellants may be understood to assert that the argument should not have been allowed regardless of whether MAI 17.16 was defective or not, their claim is foreclosed from consideration by their failure to object to the allegedly erroneous argument at the time it was made. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 615–16 (Mo.banc 1977). Appellants have not sought review of this point as "plain error."

■ Finally appellants claim that the rear-end "doctrine" cannot be submitted as a contributory negligence instruction. Were appellants correct in their argument that the element of the proponent's own freedom from negligence must be submitted to the jury, this conclusion could follow.[11] But in light of the rationale hereinabove discussed and our disposition of their prior contentions, it must be rejected.

The judgment of the circuit court of Cass County is affirmed.

MORGAN, C. J., BARDGETT, DONNELLY and SEILER, JJ., SIMEONE, Special Judge, and FINCH, Senior Judge, concur.

WELLIVER, J., not participating because not a member of the Court when cause was submitted.

---

said he intended to do?" This sentence expresses for *Central States* the rear-end theory which present MAI 17.16 embodies. *Clevenger*, however, was based on the immediately preceding sentence in the passage quoted above, "Did defendant's driver run its truck into the rear end of plaintiff's car while plaintiff's car was being properly driven in the part of the highway where it should have been and was entitled to be?" Just as with the language from *Central States* earlier examined, this formed no part of the instruction approved in *Central States*. *Clevenger* also relied on the passage from *Rosenfeld v. Peters* examined above and on *Snyder v. Hedges*, 381 S.W.2d 376, 380 (Mo.App.1964). *Snyder* and other cases cited in it ultimately rest on the language from *Central States* we have discussed.

10. Marie Mueller filed no claim for loss of consortium.

11. In a case where the proponent is the defendant, the jury's finding of his freedom from negligence would mean plaintiffs would lose aside from any contributory negligence on their part. Thus the instruction would be mere surplusage.