Ronda G. JENSEN, Plaintiff-Appellant,

v.

Tasso PAPPAS, Jim Pappas, and ARA
Services, Inc.,
Defendants-Respondents.

No. 13403.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 7, 1984.

Motion for Rehearing or to
Transfer Denied Jan. 2, 1985.

Application to Transfer Denied
Feb. 26, 1985.

Michael W. Manners, Robert J. Graeff, Paden, Welch, Martin, Albano, & Graeff, P.C., Independence, for plaintiff-appellant.

Stephen P. Carlton, Johnson & Carlton, Carthage, for defendant-respondent ARA Services, Inc.

David C. Humphreys, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for defendants-respondents Tasso Pappas and Jim Pappas.

FLANIGAN, Judge.

Plaintiff Ronda Jensen brought this action for the wrongful death of her husband Karl Jensen, who was killed instantly as a result of a collision between the motorcycle

he was operating and a truck owned by defendant Jim Pappas. The collision occurred at approximately 8 p.m. on February 24, 1980, on North St. Louis Avenue in Joplin. The other defendants are Tasso Pappas, who was the driver of the truck, and ARA Services, Inc., to whom Tasso Pappas was making a delivery.

The paved portion of North St. Louis Avenue is 20 feet wide and has two lanes, one for northbound and one for southbound traffic. At the time of the collision the Pappas truck was parked partially in the southbound lane, headed south. Tasso Pappas, employee of his brother Jim, was engaged in moving cardboard cartons, containing TV Guide magazines, from the Pappas truck to a nearby van which was parked on the west shoulder. The van was owned by one Turnbow, employee of ARA Services, Inc. The collision occurred in front of Turnbow's house located at 1416 North St. Louis. The southbound motorcycle operated by the decedent struck the left rear portion of the Pappas truck.

The case was tried prior to the decision in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), in which the court "supplant[ed] the doctrines of contributory negligence, last clear chance, and humanitarian negligence, with a comprehensive system of comparative fault." 661 S.W.2d at 16. A jury returned a verdict in favor of all three defendants. Plaintiff appeals.

The dispositive contention of plaintiff is that the trial court erred in giving Instruction 12, a contributory negligence instruction, at the request of defendant Tasso Pappas. The instruction reads:

"Instruction No. 12

"Your verdict must be for defendant Tasso Pappas if you believe:

First, either:

decedent failed to keep a careful lookout, or

decedent's motorcycle came into collision with the rear of defendant Jim Pappas' truck, or

decedent drove at a speed which made it impossible for him to stop within the range of his visibility, and

Second, decedent, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence of decedent directly caused or directly contributed to cause the death of decedent." [1]

Plaintiff also challenges similar but separate instructions which were given on behalf of the other two defendants. No defendant claims that plaintiff's decedent was guilty of contributory negligence as a matter of law and no defendant questions the submissibility of plaintiff's case.

Although plaintiff makes several attacks upon Instruction 12, her principal complaint is that the circumstances of the case did not warrant submission of the "rear end collision doctrine" as contributory negligence on the part of Karl Jensen and that the instruction is erroneous in including that doctrine as one of the three alternative submissions in Paragraph First. For the reasons which follow, this court sustains plaintiff's contention.

The evidence for both sides showed that it was dark at the time of the accident and there were no street lights in the vicinity. Police were summoned to the scene and arrived almost immediately. Police photographs were taken before the vehicles were moved.

The Pappas truck was a "10-wheeler" with a large enclosed bed. It had "two sets of duals in back." At the time of the collision the left side of the truck was occupying the west 6 feet 3 inches of the 10-foot southbound lane. The truck itself was 8 feet wide, so most of it was on the pavement, while the outside right rear tires, and perhaps a portion of the inside right rear tires, were on the shoulder. The truck was positioned so that the rear of its bed was east of the right hand side door of Turnbow's van, which was parked on the west shoulder headed north. That door was open to receive the shipment. From

---

**1.** Instruction 12 was based on MAI 32.01(3), 17.05, 17.16 and 17.19.

the photographs the jury could draw a reasonable inference that there was room on the west shoulder to accommodate the Pappas truck.

The primary factual dispute concerned the condition of the lights on the rear of the Pappas truck at the moment of collision. Gladys Albright testified for the plaintiff that, shortly prior to the collision, the only light which was turned on, on the rear of the Pappas truck, was its left tail light which was "very dim." Jack Bartley testified that none of the lights on the rear of the Pappas truck was on immediately after the accident until one of the police officers "made the left tail light work—it was dirty and did not shine bright." Police officer Gladfelter, who arrived at the scene shortly after the collision, testified that no lights were then lit on the back of the truck, that the left tail light had been knocked loose by the motorcycle, and that when he reconnected its wires, it flashed "real lightly, not real bright.... There was a lot of mud on the light." Gladfelter also testified that the motorcycle left no skidmarks.

Tasso Pappas testified that it was dark before he reached Joplin. Although there was no direct evidence as to how long the Pappas truck had been parked on North St. Louis before the collision occurred, it had been there several minutes. Tasso Pappas testified that "it normally takes me thirty minutes to unload the truck," that he had 35 or 40 boxes to unload, and that each box weighed 40 pounds. He moved the boxes, one by one, from the parked truck into the Turnbow van. At the time of the collision he had almost finished unloading and had four or five boxes left.

Tasso Pappas also testified that when he arrived in front of the Turnbow residence "I pulled over as close as I could get to the van." He said he turned his headlights off but left his parking lights and flasher lights on. He said the clearance lights, on the front and back of the truck, were left on. He said he turned on the dome light in the van and proceeded to unload. Pappas testified that the right side, or east side, of

the van was 3 feet west of the edge of the pavement and that the van was 6½ or 7 feet wide. He said that "past" the west shoulder of the street, "the ground was grass, dirt, and kind of sloped a little bit.... If I pulled off into the ditch or dirt I would probably get stuck. The side of my truck was about a foot from the van." Photographs show that the vehicles were perhaps two feet apart.

Although Tasso Pappas heard the approach of the motorcycle while he was standing at the rear of his truck, he did not see the motorcycle. He heard the motorcycle shift gears three times and heard it accelerate. Pappas was standing behind the right side of his truck bed when the motorcycle struck the left side. "When the motorcycle hit I was about a foot and a half away, standing to the side of it." Pappas testified that at the time of the collision the top clearance lights on the rear of the Pappas truck were on but he did not know whether they were on after the accident. He also testified that "my body probably would have covered the right hand tail light."

Charlie Moore, a defense witness who lived 400 feet north of the accident site, testified that he saw the rear of the Pappas truck before the collision and that "the truck had its blinking lights on, very visible." He had made this observation while going to and from a Quik Trip store located somewhere south of the scene. The Pappas truck was parked on the street while Moore made that trip. At the time of the collision Moore was watching television in his living room and heard, but did not see, the motorcycle pass his house. Moore testified, without objection, that the motorcycle "went by at what I considered a high rate of speed."

Plaintiff's verdict-directing instruction against defendant Tasso Pappas, Instruction 11, submitted two alternate assignments of negligence: failing to park the truck with the right side as near to the right side of the road as practicable, (see

§ 304.015.1),[2] and failing to have the truck equipped with at least two rear lamps which were lit exhibiting a red light plainly visible from a distance of 500 feet to the rear, (see § 307.075.1). Instruction 11, in general, told the jury to find for the plaintiff if they believed that plaintiff was the spouse of Karl Jensen, that Tasso Pappas was negligent in either of the specified respects and that the decedent died as a direct result of such conduct, "unless you believe plaintiff is not entitled to recover by reason of Instruction No. 12." The latter phrase, or "tail," of Instruction 11 had to be inserted. See Notes on Use to MAI 20.02 (1981 revision).

Reading Instruction 11 and 12 together, the jury was required to find in favor of Tasso Pappas on the ground of Karl Jensen's contributory negligence under the rear end collision doctrine (or under the other two grounds submitted in Instruction 12), even if the jury also found that Tasso Pappas violated the statutory requirements with respect to tail lights or with respect to parking. If the Pappas truck was showing no tail lights at all, plaintiff was still denied recovery if the jury found that Jensen's motorcycle "came into collision with the rear of [the Pappas truck]," (which was, of course, undisputed), and Jensen was thereby negligent and such negligence directly caused or directly contributed to cause his death.

Referring to the rear end collision doctrine our supreme court has said: "This is the rule of law which recognizes that 'if one person has his vehicle in a portion of the highway *where he should have it or is entitled to have it in view of the course in which he is proceeding,* and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the overtaking vehicle....'" (Citing authorities) (Emphasis added.) *Todd v. Presley,* 413 S.W.2d 173, 175 (Mo.1967). In *Todd,* at p. 175, the court said the facts did not present the "*'clear and simple situation* of one vehicle being operated for a considerable distance behind another and overtaking it,'" (emphasis added), but did present "the situation of an intersectional collision." The case was held not to be submissible under the rear end collision doctrine.

Again referring to the rear end collision doctrine, the supreme court has said: "It is not recommended that this theory of recovery be employed except where the facts come strictly within the pattern of the typical rear-end collision situation."[3] *Witherspoon v. Guttierez,* 327 S.W.2d 874, 878 (Mo.1959). That language was quoted with approval in *Clevenger v. Walters,* 419 S.W.2d 102 (Mo. banc 1967) and *Lichtenberg v. Hug,* 481 S.W.2d 527 (Mo.App.1972).

The supreme court has also said: "The rationale of the rear-end 'doctrine,' when the evidence taken favorably to its proponent allows its submission, is simply that the party in the vehicle behind has a view of what is in front and can better explain why his vehicle struck the rear of the car ahead...." *Mueller v. Storbakken,* 583 S.W.2d 179, 182 (Mo. banc 1979).

In *Mueller,* the court pointed out that the earlier Missouri cases regarded the submission of the rear end doctrine as a submission of specific negligence but that, in recent cases, the doctrine "has been interpreted more broadly." The court quoted with approval the following language from *Barlow v. Thornhill,* 537 S.W.2d 412,

---

**2.** References to statutes are to RSMo 1978, V.A.M.S.

**3.** Not only may the rear end doctrine, in an appropriate case, be used as a theory of recovery, it formerly could also be used defensively, if the facts warranted, as contributory negligence of the driver of the following vehicle. See *Mueller v. Storbakken,* 583 S.W.2d 179 (Mo. banc 1979); *Stretch v. State Farm Mutual Automobile Ins. Co.,* 645 S.W.2d 729 (Mo.App.1983); and *Pitezel v. Danielsen,* 571 S.W.2d 694 (Mo.App.1978). As indicated previously, however, our supreme court, in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), abolished the doctrine of contributory negligence and adopted a system of comparative fault.

421 (Mo. banc 1976): "A rear-end submission may be justified in automobile collision cases *under circumstances warranting an inference of defendant's negligence.* As said in *Lichtenberg v. Hug*, 481 S.W.2d 527, 529 (Mo.App.1972), '... the doctrine approaches—if it does not reach—that of res ipsa loquitur in that under the circumstances in *Jones [v. Central States Oil Co.] the fact of collision bespeaks the defendant's negligence.'"  (Emphasis added.)

The court in *Mueller* said, at p. 182:

"It follows from the recent developments of the rear-end 'doctrine' that its applicability is determined at trial in much the same manner courts approach the use of *res ipsa loquitur* in other situations. *The court determines from all the evidence, taken in the light most favorable to the proponent of the theory, that the collision with the rear of the lead vehicle may be found to have occurred under circumstances which the court believes would permit the jury to draw an inference of negligence without proof of what action or omission comprised the negligence by the driver of the following vehicle.* Such negligence can arise in relation to a plethora of duties imposed on a driver as he approaches hills or moves in the same direction as other vehicles; the situation existing from moment to moment determines the nature of those duties, which our law describes simply as the 'care that a very careful and prudent person would use under the same or similar circumstances.'"  (Emphasis added.)

That portion of Instruction 12 which submitted the rear end collision doctrine was based on MAI 17.16. The Notes on Use to MAI 17.16 state: "The rear end doctrine is limited in scope and this instruction should not be used except where the facts show the instruction is *clearly applicable.*" (Emphasis added.)

In *Mueller*, supra, the court held that MAI 17.16 was not erroneous in failing to contain language requiring an express finding that the driver of the lead vehicle was operating it with the highest degree of care. Further the court held that MAI 17.16 was not erroneous in failing to require an express finding that the lead vehicle was "in a place where it had the right to be." 583 S.W.2d at 185.

It has been said "not even all rear end collisions fall within the [rear end collision] doctrine." *Clevenger v. Walters,* 419 S.W.2d 102, 106 (Mo. banc 1967). See, for example, *Todd v. Presley,* supra, and *Lichtenberg v. Hug,* supra, where the doctrine was held not to be submissible where the lead vehicle, although rear-ended, had failed to yield the right-of-way to the following vehicle and entered the highway ahead of it. Several cases have stated that in order for the doctrine to be invoked, the lead vehicle must have been in a place where it was entitled to be. *Coffer v. Paris,* 550 S.W.2d 915 (Mo.App.1977); *Gaynor v. Horwitz,* 464 S.W.2d 537 (Mo.App. 1971); *Clevenger v. Walters,* supra; *Todd v. Presley,* supra. Although the court in *Mueller* held that an express finding to the latter effect was not a necessary ingredient in an instruction patterned on MAI 17.16, the court did not eliminate the respective positions and the relative movements of the vehicles as factors to be considered by the trial court in determining whether the doctrine should be submitted at all.

Before the doctrine is submitted there must be a showing of circumstances warranting an inference of negligence on the part of the driver of the following vehicle, *Mueller v. Storbakken,* supra; *Barlow v. Thornhill,* supra; *Becker v. Finke,* 567 S.W.2d 136 (Mo.App.1978); *Wagoner v. Hurt,* 554 S.W.2d 587 (Mo.App. 1977); —circumstances "bespeaking negligence." *Barlow v. Thornhill,* supra. Necessary factors to be considered include the time and distance available to the operator of the following vehicle, *Schlechta v. Poole Truck Lines, Inc.,* 678 F.2d 59 (8th Cir. 1982), *Becker v. Finke,* supra, and the respective positions of the vehicles, *Schlechta v. Poole Truck Lines, Inc.,* supra; *Martin v. Oliver,* 603 S.W.2d 674 (Mo.App. 1980); *Mueller v. Storbakken,* supra.

The fact that the lead vehicle was not in motion at the time of the collision does not per se deprive its operator of the benefit of the rear end collision doctrine. The submission of the doctrine was held proper where the lead vehicle was stopped at an intersection waiting for a traffic light to change, *Pitezel v. Danielsen*, supra; *Moss v. Courtaway*, 400 S.W.2d 160 (Mo. 1966), where the lead vehicle was stopped at a stop sign, *Suchara v. St. Louis Public Service Company*, 410 S.W.2d 93 (Mo.App. 1966), where the lead vehicle was stopped in the median portion of an interstate highway by reason of involvement in an earlier accident, *Barlow v. Thornhill*, supra, where the lead vehicle was stopped momentarily on the highway due to traffic conditions ahead, *Coffer v. Paris*, supra, where the lead vehicle was stopped for 15 to 30 seconds on the order of a flagman, *Martin v. Oliver*, supra, and where the lead vehicle stopped briefly in the "curb lane" of a highway so the driver could put on his sunglasses, *Becker v. Finke*, supra.

Counsel have not cited, and the research of this court has not disclosed, any Missouri case permitting submission of the rear end collision doctrine under the circumstances present here. The Pappas truck was parked on a city street, occupying approximately ⅔ of the paved portion of the southbound lane, on a dark night and for a substantial period of time. Under Instruction 12 the jury was permitted to find against the plaintiff on the basis of the rear end doctrine alone even if the jury also found that the Pappas truck was improperly parked and was not displaying lawful tail lights and if the jury also found that Karl Jensen was *not* negligent in either of the other respects submitted as contributory negligence under Instruction 12.

It cannot properly be said that the circumstances of this case, even when viewed favorably to respondents, justified submission of the rear end collision doctrine. It cannot reasonably be maintained that colliding with the *rear* of the Pappas truck "bespeaks" negligence any more than colliding with the front of it. When Instructions 11 and 12 are viewed together, submission of the doctrine under the instant facts gave the jury what in effect was a roving commission. This error also afflicted the respective contributory negligence instructions of the other defendants.

The judgment is reversed and the cause is remanded for further proceedings consistent herewith.

TITUS, P.J., and GREENE, J., concur.